[No. 343-2.   Division Two.   April 21, 1972.]

JAMES F. BELL, *Appellant,* v. THE DEPARTMENT OF MOTOR VEHICLES, *Respondent.*

---

[9]Overruled on other grounds: *Nordstrom v. White Metal Rolling & Stamping Corp.,* 75 Wn.2d 629, 453 P.2d 619 (1969).

*Donald H. McGavick,* for appellant.

*Slade Gorton, Attorney General,* and *John H. Keith, Assistant,* for respondent.

PETRIE, C.J.—Appellant, James F. Bell, filed this appeal from a superior court judgment sustaining an order of the director of the Department of Motor Vehicles, which had suspended his driver's license for 6 months because of his refusal to submit to a chemical test of his breath as required by RCW 46.20.308 (Initiative 242).

The trial court's uncontroverted findings of fact establish that on December 15, 1968, Trooper Gary Silverthorn of the Washington State Patrol had reason to believe that Mr. Bell had been driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor, and he did thereupon place the appellant under arrest. Trooper Silverthorn advised Mr. Bell of (1) the consequences of refusing to take the chemical test of his breath and (2) his rights under RCW 46.20.308. The trooper did thereupon request appellant to submit to a chemical test of his breath. The trial court also found, and Mr. Bell assigns error to the court's finding, that he "refused to submit to a chemical test of his breath."

After having been transported to a local office of the Washington State Patrol, where a breathalyzer instrument was located, Mr. Bell indicated that he would not submit to the test. The trooper's explanation of Mr. Bell's "refusal"

was, "He stated I was not a physician and therefore not privileged to give him the test." The trooper also testified that appellant "repeatedly stated this wasn't a refusal, but he wouldn't take that kind of a test." Mr. Bell's own explanation was:

The law was new,[1] and everything, and it was fresh in my mind, and I thought I had to have an attorney present, or that if I took the test that it would be a legitimate test, and I thought I was guilty, you know, right then.

In his brief, the appellant asserts that he was confused by the trooper's explanation of his rights under the newly effective law, but that he did not refuse the test. The explanation necessarily included the statement, "You further have the right to take *additional tests* administered by any qualified person of your choosing and at your expense." (Italics ours.) *Connolly v. Department of Motor Vehicles*, 79 Wn.2d 500, 487 P.2d 1050 (1971). The confusion, if any, in the appellant's mind would appear to stem from his conception that he could have a test administered by his physician in lieu of the test by the trooper. He did not have that right. There is ample evidence in the record to sustain the court's finding that Mr. Bell did, in fact, refuse to submit to the test.

Mr. Bell next contends that the trial court erred in failing to find that Trooper Silverthorn was not qualified to request the appellant to take the breathalyzer test. Using the requirement of RCW 46.61.506(3)[2] that, in order for a

---

[1] The effective date of Initiative 242 was December 5, 1968, 10 days prior to Mr. Bell's arrest.

[2] RCW 46.61.506: "(3) Chemical analysis of the person's blood or breath to be considered valid under the provisions of this section *shall have been performed* according to methods approved by the state toxicologist and *by an individual possessing a valid permit issued by the state toxicologist for this purpose.* The state toxicologist is directed to approve satisfactory techniques or methods, to supervise the examination of individuals to ascertain their qualifications and competence to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the state toxicologist." (Italics ours.)

chemical analysis of a person's breath to be considered valid, it must have been performed by an individual possessing a valid permit, appellant contends Trooper Silverthorn did not have a valid permit and therefore did not have the right to request him to submit to the breathalyzer test. Appellant argues that the revocation of his license cannot be sustained when the statutory requirement for performance of the test had not been met; to wit, the requirement that the breathalyzer operator possess a valid permit.

█ In meeting appellant's argument we do not deem it necessary to examine the trooper's qualifications as a breathalyzer operator. His qualifications are not relevant to an inquiry into whether appellant's license was lawfully revoked by the Department of Motor Vehicles. A license revocation proceeding under our implied consent provisions is civil in nature. It is entirely separate and distinct from proceedings on the criminal charge for which the driver was arrested. *Fritts v. Department of Motor Vehicles,* 6 Wn. App. 233, 492 P.2d 558 (1971). We stated in *Fritts* at 235:

[RCW 46.20.308] mandates the Department of Motor Vehicles to revoke or deny the privilege to drive upon the happening of a series of events: (1) arrest for any offense; (2) existence of reasonable grounds by the arresting officer to believe that the arrested person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor; (3) request by a law enforcement officer to the person arrested to submit to a chemical test of his breath; (4) informing the person arrested of his right to refuse the test and of his right to have other tests administered by any qualified person of his choosing, but warning that his refusal to submit to chemical testing will result in revocation or denial of his privilege to drive even though no test be given; (5) receipt by the department of the statutorily necessary sworn report of the law enforcement officer.

The scope of inquiry in a license revocation proceeding under RCW 46.20.308 is limited to the above issues. The

requirement of RCW 46.61.506(3), that the breathalyzer test be performed by a person possessing a valid permit, was intended as one of the safeguards surrounding the admission into evidence of breathalyzer test results obtained through the implied consent provisions of Initiative 242. *State v. Felix*, 78 Wn.2d 771, 479 P.2d 87 (1971). A person's qualifications to administer the test bears on his competency to testify as to the results of the test given. The issue of a breathalyzer operator's qualifications does not arise until a test is made and the results thereof are offered as evidence against the driver.

■ Appellant makes the further argument that the appropriate standard of proof in a license revocation proceeding is proof beyond a reasonable doubt. We cannot agree. Such a contention would be totally inconsistent with our prior determination that a license revocation proceeding is civil and not criminal in nature. *Fritts v. Department of Motor Vehicles, supra.*

■ Finally, we reject appellant's attack on the constitutionality of Initiative 242, on the theory that the statute violates article 1, section 9 and article 4, section 1 of the Washington State Constitution.[3] It has been definitively determined that Initiative 242 does not contravene article 1, section 9 of the constitution. *State v. Moore*, 79 Wn.2d 51, 483 P.2d 630 (1971).

As to the intrusion into the "judicial powers" clause of the constitution, it is the appellant's position that when the Department of Motor Vehicles holds a hearing and makes a determination at the conclusion of said hearing the department acts in a judicial manner. More precisely, appellant contends, that in holding its hearings on the revocation of a driver's license, the Department of Motor Vehicles has to and, in fact, does make conclusions concerning a driver's

---

[3]Article 1, section 9 of the constitution provides: "No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense."

Article 4, section 1 of the constitution provides: "The judicial power of the state shall be vested in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may provide."

violation of a criminal statute in that the department must first decide whether or not the arresting officer had a reasonable basis to believe the driver had been operating his motor vehicle while under the influence of intoxicants. It is that degree of involvement by an administrative agency into the criminal area which, appellant contends, violates the constitutional mandate of separation of powers. If the statute had clothed an administrative agency with authority to impose some criminal penalty, or even if the statute purported to clothe an administrative agency with authority to make any determination binding on a court in any criminal proceedings, we would be inclined to explore this contention in some depth. There is no contention, however, that any departmental action is binding upon any court in a criminal proceeding, and we have previously noted that the department's function is regulatory and not penal in nature.

> Regardless of whether driving is a right or a privilege, the license revocation proceeding is not a criminal proceeding. The purpose of enacting RCW 46.20.308 was to protect the public, not to punish the licensee, though the threat of punishment may necessarily be intended to deter the drunken driver. The revocation of drivers' licenses for refusal to submit to the implied consent provisions of RCW 46.20.308 is a function of the Department of Motor Vehicles flowing from the police power of the state to regulate driving in the interest of the public welfare and safety.

*Fritts v. Department of Motor Vehicles, supra* at 240. Appellant's argument that the statute unconstitutionally vests judicial powers in an administrative agency is therefore unfounded.

Judgment affirmed.

PEARSON and ARMSTRONG, JJ., concur.