2005 OK CIV APP 84

Rickey Lee WOLFE, Plaintiff/Appellant,

v.

STATE of Oklahoma, ex rel. DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellee.

No. 102131.

Court of Civil Appeals of Oklahoma, Division No. 4.

Sept. 6, 2005.

As Corrected Sept. 20, 2005.

Todd Kernal, Shaeffer, Shaeffer & Kernal, Norman, OK, for Plaintiff/Appellant.

J. Robert Blakeburn, State of Oklahoma, ex rel. Department of Public Safety, Oklahoma City, OK, for Defendant/Appellee.

KEITH RAPP, Vice Chief Judge.

¶1 The trial court plaintiff, Rickey Lee Wolfe (Wolfe), appeals a judgment sustaining revocation of his driver's license by the trial court defendant, Commissioner of the Department of Public Safety of the State of Oklahoma (DPS). The trial court modified the suspension, but that aspect of the decision is not before this Court for review.

## BACKGROUND

¶2 The facts are not disputed. A Norman, Oklahoma, police officer stopped Wolfe for driving across the center line. The officer suspected that Wolfe was intoxicated after seeing and speaking to him. Another officer took over the process and reached the same conclusion. This officer initiated, but did not complete, field sobriety tests because Wolfe refused to take the tests.

¶3 Wolfe was transported to the Cleveland County Detention Center. At the Center, the arresting officer asked Wolfe to take a breath test. Wolfe was advised of the consequences of a refusal, including revocation of his driver's license. He refused and signed a document confirming his refusal and acknowledging the consequences of his refusal.

¶4 Upon certification of the refusal to DPS, Wolfe's driver's license was revoked. He appealed to the District Court where the evidence pertinent to the appeal before this Court established that all of the test devices

available at the Cleveland County Detention Center, and that would have been utilized by the Norman authorities, were not on the official State approved list of devices.[1]

¶5 Wolfe's contention in the District Court, and in this appeal, is that the Norman authorities had to be able to provide a legal test, which they could not do because the devices were not approved. Wolfe states that had he taken the test on the unapproved machine, the result would not have been used to revoke his license. Counsel for DPS stated:

I would have to agree that it is most probable that the license revocation would be set aside by the Department.

¶6 DPS' position is that it is the act of refusal that carries with it the consequence of license revocation. DPS argues that testing procedures and related issues are immaterial following refusal to be tested under the statute. Thus, Wolfe having refused the test, had his license properly revoked.

¶7 The trial court sustained the revocation with modifications. Wolfe appeals.

## STANDARD OF REVIEW

¶8 Where the facts are not disputed, an appeal presents only a question of law. *Baptist Building Corp. v. Barnes*, 1994 OK CIV APP 71, ¶5, 874 P.2d 68, 69. The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod · Investment Corp.*, 1996 OK 125, 932 P.2d 1100 n. 1. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Keizor v. Sand Springs Ry. Co.*, 1993 OK CIV APP 98, ¶5, 861 P.2d 326, 328.

---

1. The devices were two Intoxylizer 5000–Ds equipped with Guth 2100 Alcohol Breath Test Simulators. The Guth 2100 had not been approved by the State Board of Tests. *See Manning v. DPS*, 2003 OK CIV APP 57, ¶13, 71 P.3d 527, 529 (47 O.S.2001 § 759 requires that collection and analysis of a person's breath, to be considered valid and admissible evidence, must be performed in compliance with the rules and regulations adopted by the Board of Tests. The rules of the Board specifically provide for designation by the Board of approved breath-testing devices and specifically approve various devices.) DPS does not dispute the fact that the devices were not on the approved list of devices when Wolfe was asked to take the test.

## ANALYSIS AND REVIEW

¶ 9 Under the Oklahoma statutes, a driver arrested with any measurable quantity of alcohol on his or her breath must surrender his or her driver's license. 47 O.S. Supp. 2004, 754 (A).[2] Thereafter, if a test has been administered and the result reveals a sufficiently high concentration of alcohol in the blood, as defined in the statute, DPS revokes the driver's license upon receipt of the test results. 47 O.S. Supp.2004, 754 (C). The driver may seek administrative review where one of the issues for review is whether "the testing procedures used were in accordance with the rules of the Board of Tests for Alcohol and Drug Influence." 47 O.S. Supp. 2004, 754 (F)(1)(a).[3]

¶ 10 However, a separate statute governs when, as here, there is a refusal to take the test. 47 O.S. Supp.2004, 753.[4] In this case, when a driver refuses the test, a test is not given, except in circumstances not involved in this case. Then, when DPS receives notification of the refusal and an affidavit of probable cause, the license to drive is revoked. The driver may also seek administrative review and the issues are framed by 47 O.S. Supp.2004, 754 (F)(2).[5]

2. Amendments to Section 754 in 2005 are inapplicable, but do not affect the case in any event.

3. Section 754(F) delineates the issues to be covered in the administrative hearing. None of these are involved in the appeal before this Court. Section 754(F)(1) provides:

The hearing before the Commissioner of Public Safety or a designated hearing officer shall be conducted in the county of arrest or may be conducted by telephone conference call. The hearing may be recorded and its scope shall cover the issues of whether the officer had reasonable grounds to believe the person had been operating or was in actual physical control of a vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol, any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance as prohibited by law, and whether the person was placed under arrest.
1. If the revocation or denial is based upon a breath or blood test result and a sworn report from a law enforcement officer, the scope of the hearing shall also cover the issues as to whether:
a. if timely requested by the person, the person was not denied a breath or blood test,
b. the specimen was obtained from the person within two (2) hours of the arrest of the person,
c. the person, if under twenty-one (21) years of age, was advised that driving privileges would be revoked or denied if the test result reflected the presence of any measurable quantity of alcohol,
d. the person, if twenty-one (21) years of age or older, was advised that driving privileges would be revoked or denied if the test result reflected an alcohol concentration of eighthundredths (0.08) or more, and
e. the test result in fact reflects the alcohol concentration.

4. Section 753 reads as follows:
If a conscious person under arrest refuses to submit to testing of his or her blood or breath for the purpose of determining the alcohol concentration thereof, or to a test of his or her blood, saliva or urine for the purpose of determining the concentration of any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance, none shall be given, unless the investigating officer has probable cause to believe that the person under arrest, while intoxicated, has operated the motor vehicle in such a manner as to have caused the death or serious physical injury of any other person or persons. In such event, such test otherwise authorized by law may be made in the same manner as if a search warrant had been issued for such test or tests. The sample shall be taken in a medically acceptable manner at a hospital or other suitable health care facility. The Commissioner of Public Safety, upon the receipt of a sworn report of the law enforcement officer that the officer had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol, any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance and that the person had refused to submit to the test or tests, shall revoke the license to drive and any nonresident operating privilege for a period as provided by Section 47–6–205.1 of this title. If the person is a resident or a nonresident without a license or permit to operate a motor vehicle in this state, the Commissioner of Public Safety shall deny to the person the issuance of a license or permit for a period as provided by Section 47–6–205.1 of this title subject to a review as provided in Section 754 of this title. The revocation or denial shall become effective thirty (30) days after the arrested person is given written notice thereof by the officer or by the Department as provided in Section 754 of this title.

5. Section 754(F)(2) provides:
If the revocation or denial is based upon the refusal of the person to submit to a breath or

¶ 11 Wolfe's dilemma is that, if he had taken the test, the result could not be used to revoke his license because the test devices were not officially approved. However, under the literal reading of the procedure under the "refusal" review situations under Section 754(F)(2), the only questions for review at the administrative level are probable cause, the arrest, the refusal, and informing the driver of the consequences of the refusal.

¶ 12 In this case, it is clear that all of the Section 754(F)(2) express criteria have been met. Therefore, the issue here is whether Section 754(F)(2), as well as other provisions of the Title referencing "tests," implicitly means a "valid" test.

¶ 13 Wolfe cites *Mullens v. Department of Public Safety, Drivers License Div.*, 327 So.2d 492 (La.Ct.App.1976). There, Mullens was arrested for driving while intoxicated and refused to take a test. His license was revoked as a consequence. However, all of the test devices were unapproved and, as a result, the test would have been invalid. The *Mullens* Court ruled that "all tests given *or proposed to be given*" were invalid and the license could not be revoked.

¶ 14 The *Mullens* Court applied and extended the ruling of *State v. Jones*, 316 So.2d 100 (La.1975), a criminal case, to its facts involving a civil action. *Jones* involved a case where a test was given, but the Court ruled that all tests were invalid because the test procedures and device maintenance and inspection procedures had not been officially promulgated. The *Jones* Court held:

> The scope of our decision is no broader than to decree that the State may not avail itself of the presumptions available under Lairs 32:662 until the 'state department of health,' that is, the Louisiana Health and Human Resources Administration, establishes and promulgates carefully detailed methods, procedures and techniques covering, but not limited to repair, maintenance, inspection, cleaning, chemical accuracy, certification, proof of adherence to which

would reasonably assure that the right articulated in Genial, supra, would be recognized and implemented in the courts of law of this State.

*Jones*, 316 So.2d at 105.

¶ 15 The *Jones* case meant that Louisiana did not have a test which could be used to establish a presumption of intoxication. Unless the refusal to take a test *also* creates a presumption of intoxication under Louisiana law then in effect, *Mullens* would be an over extension of *Jones*. However, the *Mullens'* Opinion states that Louisiana law made no distinction in civil and criminal actions between procedures for testing and effect of testing, thus suggesting (because of the result in the case) that in Louisiana a presumption of intoxication followed from a test as well as from a refusal to take a test. *Mullens*, 327 So.2d at 494. Thus, clearly a valid test had to be available.

¶ 16 Nevertheless, assuming *Mullens* stands for the proposition that a valid test must be available in case of a refusal to take a test, there is a split of authority on the issue of whether defects in testing procedures are relevant in cases where the driver's license is revoked for *refusal* to take the test. *In re Suspension of the License to Operate a Motor Vehicle of Rhonda Ricker Rogers*, 94 N.C.App. 505, 380 S.E.2d 599, 601 (App.1989). The majority of jurisdictions find that such defects are not relevant.

¶ 17 In addition to *Rogers*, cases holding that the State need not prove that a valid test was available in instances of a refusal to take a test include: *Halloway v. Martin*, 143 Ariz. 311, 693 P.2d 966 (Ct.App.1984); *Conahan v. Department of Highway Safety and Motor Vehicles, Bureau of Driver Improvement*, 619 So.2d 988 (Fla.Dist.Ct.App.1993); *Moran v. Commmonwealth*, 44 Pa.Cmwlth. 105, 403 A.2d 637 (1979); *Bell v. Department of Motor Vehicles*, 6 Wash.App. 736, 496 P.2d 545 (1972); *see Malveaux v. Colorado Dept. of Revenue, Motor Vehicle Div.*, 727 P.2d 875 (Colo.Ct.App.1986). Moreover, the statutory

blood test, reflected in a sworn report by a law enforcement officer, the scope of the hearing shall also include whether:

a. the person refused to submit to the test or tests, and

b. the person was informed that driving privileges would be revoked or denied if the person refused to submit to the test or tests.

scheme in these jurisdictions is the same as Section 754(F)(2) of the Oklahoma statute. *Halloway,* 693 P.2d at 967; *Conahan,* 619 So.2d at 989; *Bell,* 496 P.2d at 547. The Pennsylvania statute considered in *Moran* also had the same scheme as Section 754(F)(2) of the Oklahoma statute. *See Commissioner v. Heresko,* 28 Pa.Cmwlth. 508, 368 A.2d 1357, 1358 (1977).

¶ 18 Section 754(F)(2) is unambiguous in its provisions for what is necessary to prove in order to revoke a license for refusal to take a test. The consequence of loss of driver's license clearly follows from a refusal to take a test. When the test is taken and the results warrant, the consequence of loss of driver's license follows from the fact of driving while intoxicated. The issue of whether a driver's license should be revoked for refusal to take a test is a matter of public policy determined by legislative enactment set out in the statutes, and that enactment in Oklahoma is that the license will be revoked.

¶ 19 Wolfe argues that not permitting a challenge to the test validity in refusal cases opens the door to opportunities of abuse. Thus, Wolfe contends that police officers could routinely offer tests that have no validity or that have little or no evidentiary value.

¶ 20 First, the argument is hypothetical in that the facts here do not show any abuse. It appears from the transcript that the Norman authorities did not know that their test device had not yet been officially approved. Nothing in the record shows, however, that an approval would not be forthcoming or that the devices were inherently inaccurate or otherwise defective. Second, the record does not reflect that Wolfe refused to take the test because of the absence of an officially approved machine. *See Gibb v. Dorius,* 533 P.2d 299 (Utah 1975).

¶ 21 Wolfe argues that the result is illogical when, as here, taking and failing the test would not result in revocation. As stated above, the consequence of revocation follows solely from the refusal, not the test. Again, it is for the Legislature to decide whether simply refusing a blood alcohol test merits revocation of a driver's license. The Oklahoma statute unequivocally shows that the

decision has been made in favor of revocation.

¶ 22 Therefore, the judgment of the trial court is affirmed.

¶ 23 AFFIRMED.

GOODMAN, P.J., and STUBBLEFIELD, J., concur.