# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| YURI PROSTOV, | ) | NO. 71219-5-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | PUBLISHED OPINION |
| DEPARTMENT OF LICENSING, | ) | |
| | ) | FILED: April 6, 2015 |
| Respondent. | ) | |
| | ) | |

LAU, J. — The Washington Department of Licensing suspended Yuri Prostov's driver's license for using his twin brother's name in a license application. He contends the importance of a licensee's private interest requires proof by evidence beyond a reasonable doubt or clear, cogent, and convincing evidence as a matter of due process. The department's burden of proof in an administrative license proceeding under RCW 46.20.291(7) and RCW 46.20.0921(1)(e) to suspend or revoke a license is the preponderance of the evidence standard. This standard of proof strikes a fair balance between the rights of a licensee and the state's legitimate interest in regulating vehicle drivers. We conclude that such a standard adequately conveys to the fact finder the

level of subjective certainty about the factual conclusion necessary to satisfy due process. We affirm the suspension of Yuri Prostov's driver's license under RCW 46.20.291(7) and RCW 45.20.0921(1)(e). We also affirm the trial court's denial of Yuri's attorney fees request.

FACTS AND PROCEDURAL HISTORY

Yuri Prostov and Geirman Prostov are identical twin brothers.[1,2] The Washington Department of Licensing issued driver's licenses to each of them.

In 2010, the department performed a routine "scrub" of its files using facial recognition software designed to identify fraud.[3] RP 18–19.[4] The software compares individual driver photos to other photos contained in the department's database. This software identified photos of Yuri and Geirman for further review.

The department assigned Jessica Bullock from the department's Licensing Integrity Unit to investigate. Bullock compared the department's photos of Yuri and Geirman to determine possible matches. Bullock focused on durable characteristics that are less likely to change over time, such as scars, birthmarks, ears, nose, eye shape, and lips. She noted several differences in the photos of the brothers, including a scar on the right side of Yuri's upper lip.

---

[1] We refer to each brother by his first name for clarity.

[2] The Report of Proceedings misspells Geirman's name as "Jermaine."

[3] The legislature authorized the department to implement and use a facial recognition matching system. RCW 46.20.037.

[4] The Report of Proceedings appears in two volumes dated October 14, 2013, and October 15, 2013. Because the pages are numbered sequentially, 1–176, no dates are used in the citations to the record.

Bullock concluded that Yuri obtained a driver's license at the Kirkland Licensing Center using Geirman's name on June 25, 2001 and on January 28, 2009. The department issued an order suspending Yuri's license for 364 days for using a false name in a driver's license application, contrary to RCW 46.20.0921(1)(e). Yuri appealed and the hearing examiner affirmed the department's decision after an administrative hearing.

In Washington, drivers facing license suspension under RCW 46.20.291 are entitled to several procedural protections. First, the driver must receive notice and an opportunity for a driver improvement interview. RCW 46.20.322. A driver may file a written statement, present evidence, and present argument before an analyst sitting as a "referee." RCW 46.20.327. Following an adverse finding, the driver may request a formal hearing to contest the department's decision. RCW 46.20.328. At the hearing, the driver may introduce evidence, subpoena witnesses, and present argument on the record. RCW 46.20.332. Following a determination at the hearing, the driver may appeal to the superior court for a de novo hearing. RCW 46.20.334. A license suspension is stayed pending the outcome of the formal hearing and an appeal to superior court. RCW 46.20.329. Yuri requested a de novo hearing in superior court under RCW 46.20.334.[5]

---

[5] Because the trial court conducted a de novo hearing, the administrative record is not before this court. The de novo proceeding in the superior court is a "full and independent judicial, evidentiary, and factual review . . . ." Dep't of Motor Vehicles v. Andersen, 84 Wn.2d 334, 340, 525 P.2d 739 (1974).

The trial court admitted the department's photos of Yuri and Geirman.[6] Bullock testified for the department about her investigation. The trial court compared the photos of Yuri and Geirman rather than permitting Bullock to testify about her comparison of the photos.

Department of Licensing hearings examiner manager Laurie Provoe worked for the department for almost 35 years. She generally testified about the license application procedures.

Yuri also testified and confirmed that his facial scar extended from the right side of his upper lip to the right side of his nose since at least 2001. He also confirmed that Geirman had no facial scar.

The court observed Yuri's facial scar in court and noted that Geirman's photos showed no facial scar. The court also noticed that unlike Yuri's straight nose, Geirman's nose bends slightly to the left. The court concluded that the photo in Yuri's license issued under Geirman's name[7] is significantly different from the photo of Geirman in the known picture of Geirman.[8] It found that the photos in the 2009 license contained the same facial scar and nose structure as the photos of Yuri in exhibits 1R and 1S.

---

[6] The photos of Yuri were admitted as exhibits K, R, and S. Geirman's photos were admitted as exhibits L and V.

[7] These were shown in exhibits 1T and 1U. Exhibit 1T is an enlarged color image of a 2009 Washington driver's license bearing Yuri's photo and Geirman's name. Exhibit 1U depicts the same photo as 1T, but is enlarged further. Exhibit 1U also bears Geirman's name and indicates an issue date of January 28, 2009.

[8] The department submitted this photo as exhibit 1V. It shows an enlarged photo of Geirman taken from the department's records. The exhibit shows an issue date of January 21, 2010.

The court concluded that the department proved by a preponderance of the evidence that Yuri used a false or fictitious name to obtain the January 28, 2009 driver's license. The court also concluded that the department failed to prove by a preponderance that Yuri used his brother's name in a 2001 application. Based on its finding as to the 2009 license, the court upheld the department's 364-day suspension of Yuri's driver's license. The court also denied Yuri's request for attorney fees under the Equal Access to Justice Act, RCW 4.84.340 (EAJA).

Yuri appeals.

## ANALYSIS

### Burden of Proof

Yuri mainly challenges the trial court's conclusion that the preponderance of evidence standard applies to a license suspension proceeding under RCW 46.20.291(7) (prohibited practices statute). He argues that the text of the statute and principles of due process require proof beyond a reasonable doubt. In the alternative, he contends due process requires clear, cogent, and convincing evidence.

RCW 46.20.291 states in part:

> The department is authorized to suspend the license of a driver upon a showing by its records or other sufficient evidence that the licensee:
> . . . .
> (7) Has committed one of the prohibited practices relating to drivers' licenses defined in RCW 46.20.0921.

RCW 46.20.0921 (misdemeanor penalty statute) lists eight license-related practices that constitute a misdemeanor if violated. Relevant to this case, subsection .0921(1)(e) states:

> (1) It is a misdemeanor for any person:
> . . . .

(e) To use a false or fictitious name in any application for a driver's license or identicard or to knowingly make a false statement or to knowingly conceal a material fact or otherwise commit a fraud in any such application.

RCW 46.20.0921(1)(e).

Beyond a Reasonable Doubt Standard

Yuri contends, "The plain and unambiguous language of the statute requires the DOL [Department of Licensing] to prove that the licensee 'has committed' criminal statutory fraud, which can only be established using the beyond a reasonable doubt standard of review." Br. of Appellant at 10. We disagree.

The first rule of statutory construction is to give effect to the legislature's intent, which is primarily derived from the plain meaning of the statute. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). Absent a specialized statutory definition, courts give a term its plain and ordinary meaning. Plain meaning should be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. Lake, 169 Wn.2d at 526.

No relevant statute defines the term "commit." Yuri cites to a dictionary defining "commit" as "to carry into action deliberately: PERPETUATE <commit a crime>." Br. of Appellant at 12. He also cites to a law dictionary that defines "commit" as "[t]o perpetuate[9] (a crime). BLACK'S LAW DICTIONARY 266 (7th ed. 1999)." (First alteration in original.)

Relying on these definitions, Yuri argues, "[U]nder its [commit] plain meaning, RCW 46.20.291(7) requires the [department] to prove that the licensee perpetuated a

_____

[9] We note Black's Law Dictionary defines "commit" as to perpetrate not "perpetuate" a crime.

-6-

criminal fraud under RCW 46.20.0921(1)(e)." Br. of Appellant at 12. He also argues that because the department "alleged" that he "'committed' criminal statutory fraud," it must prove this misdemeanor allegation based on the beyond a reasonable doubt standard applicable in a criminal case. Br. of Appellant at 10; see RCW 9A.20.010 (classification of crimes).

Yuri's dictionary definition reasoning is not persuasive. It is well settled that "[w]e may discern the plain meaning of nontechnical statutory terms from their dictionary definitions." State v. Kintz, 169 Wn.2d 537, 547, 238 P.3d 470 (2010). In the present case, Webster's Third International Dictionary provides numerous definitions for the term "commit," including to obligate or bind to take some course of action. Further, we decline to rely on a law dictionary's definition of "commit" to ascertain its ordinary meaning. "When a technical term is used in its technical field, the term should be given its technical meaning by using a 'technical rather than a general purpose dictionary' to resolve the term's definition." Tingey v. Haisch, 159 Wn.2d 652, 658, 152 P.3d 1020 (2007) (quoting City of Spokane ex rel. Wastewater Mgmt. Dep't v. Dep't of Revenue, 145 Wn.2d 445, 454, 38 P.3d 1010 (2002)). There is no indication that the legislature intended to use the legal definition of the term "commit." Reliance on a legal dictionary definition is thus improper.

Yuri also reads the term in isolation without regard to context. "All words must be read in the context of the statute in which they appear, not in isolation or subject to all possible meanings found in a dictionary." State v. Lilyblad, 163 Wn.2d 1, 9, 177 P.3d 686 (2008). The department is authorized to suspend a license based on "its records" or "sufficient evidence" whenever a licensee "commits" a "prohibited practice" that is

-7-

defined in the misdemeanor penalty statute. RCW 46.20.291; RCW 46.20.0921. Read together, nothing in these two statutes indicates the legislature intended for the department to prove beyond a reasonable doubt "criminal fraud" in order to suspend a license.

> First, a single word in a statute should not be read in isolation. Rather, the meaning of a word may be indicated or controlled by reference to associated words. In applying this principle to determine the meaning of a word in a series, a court should "take into consideration the meaning naturally attaching to them from the context, and . . . adopt the sense of the words which best harmonizes with the context."

State v. Gonzales Flores, 164 Wn.2d 1, 12, 186 P.3d 1038 (2008) (citations and internal quotation marks omitted) (quoting State v. Roggenkamp, 153 Wn.2d 614, 623, 106 P.3d 196 (2005)).

Further, the related regulations undermine Yuri's claim that the department must prove "criminal fraud" beyond a reasonable doubt in this administrative license suspension proceeding. Under WAC 308-104-075, "[t]he department shall suspend . . . a person who has been convicted of or determined by the department to have committed one of the prohibited practices . . . listed in RCW 46.20.0921 . . . ." (Emphasis added.) This regulation is clear that the department must suspend a license if a person is either convicted of one of the prohibited practices listed in the misdemeanor penalty statute or the department determines a person committed one of the prohibited practices listed in the misdemeanor penalty statute. A "conviction" may be established for purposes of the abstract of conviction by "the payment of a fine," "unvacated forfeiture of bail or collateral deposited," "plea of guilty by the defendant" or "[a] finding of guilt." WAC 308-104-130. Thus, this regulation is clear that a driver's license may be suspended based on either a criminal conviction related to one of the

listed prohibited practices <u>or</u> an administrative determination that a driver violated one of the listed prohibited practices.

Yuri's reading of the two statutes is illogical. Read together and in context, the plain text of the prohibited practices statute, the misdemeanor penalty statute and the related regulations do not require the department to prove "criminal fraud" in an administrative license suspension proceeding before it is authorized to suspend a license under RCW 46.20.0921(1)(e).

Further,

> it has been almost universally held that the suspension or revocation of a driver's license is not penal in nature and is not intended as punishment, but is designed solely for the protection of the public in the use of the highways. It is also well established that a proceeding to revoke a driver's license is a civil not a criminal action.

<u>State v. Scheffel</u>, 82 Wn.2d 872, 879, 514 P.2d 1052 (1973) (citations omitted).

> In addition, the "beyond a reasonable doubt" standard historically has been reserved for criminal cases. This unique standard of proof, not prescribed or defined in the Constitution, is regarded as a critical part of the ". . . criminal law," and we should hesitate to apply it too broadly or casually in noncriminal cases.

<u>Addington v. Texas</u>, 441 U.S. 418, 428, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979) (quoting <u>In re Winship</u>, 397 U.S. 358, 364, 90 S. Ct. 1068 (1970)).[10]

The legislature may provide for both civil and criminal penalties in the same act without converting the civil penalty scheme into a criminal or penal proceeding. <u>State v. Von Thiele</u>, 47 Wn. App. 558, 561, 736 P.2d 297 (1987).

---

[10] Yuri relies on <u>Winship</u> to argue that the "beyond a reasonable doubt" standard applies here. That case arose from a juvenile delinquency proceeding involving a 12-year-old child accused of stealing, which subjects him to confinement for up to six years, thus implicating a liberty interest. Here, a licensee's interest in a driver's license is a property interest subject to reasonable government regulation. <u>Winship</u> is not controlling.

In <u>Ingram v. Department of Licensing</u>, 162 Wn.2d 514, 173 P.3d 259 (2007), two men challenged the suspension of their driver's licenses under the implied consent law, RCW 46.20.308. That statute, like the statute here, confers on the licensee the right to challenge the suspension by requesting a DOL formal hearing and a subsequent right to appeal the final suspension order to superior court. After discussing the evolution of the legislature's efforts to eliminate intoxicated drivers on the highways, the Supreme Court made a point of clarifying the dual-track statutory scheme of the license suspension proceeding and the criminal prosecution proceeding.

> For the sake of clarity, we first note that the implied consent proceedings before us are not criminal driving while under the influence proceedings. Rather, we are asked to review civil license suspension proceedings. These have a lower burden of proof and run on a parallel track to any criminal proceedings.

<u>Ingram</u>, 162 Wn.2d at 517–18.

The purpose of the driver's license proceeding is distinct and independent from those supporting a criminal prosecution. An administrative adjudication does not usually bar a later criminal prosecution. <u>Thompson v. Dep't of Licensing</u>, 138 Wn.2d 783, 796, 982 P.2d 601 (1999). The converse is also true. Acquittal of a criminal charge, such as driving while intoxicated, does not bar a later civil license revocation. <u>Fritts v. Dep't of Motor Vehicles</u>, 6 Wn. App. 233, 240, 492 P.2d 558 (1971) (implied consent license revocation).

In <u>Bell v. Department of Motor Vehicles</u>, 6 Wn. App. 736, 496 P.2d 545 (1972), the driver there argued that the appropriate standard of proof in a license revocation proceeding is proof beyond a reasonable doubt. We disagreed, reasoning, "Such a contention would be totally inconsistent with our prior determination that a license

revocation proceeding is civil and not criminal in nature. Fritts v. Dept. of Motor Vehicles, supra." Bell, 6 Wn. App. at 740.

We conclude neither legislative intent nor case authority supports application of the heightened criminal standard to a driver's license suspension proceeding under the prohibited practices statue, RCW 46.20.291(7) and the misdemeanor penalty statute, RCW 46.20.0921(1)(e).

### Clear, Cogent, and Convincing Standard

Both parties acknowledge that suspension of a driver's license for a statutorily defined cause implicates a property interest protected by due process. Mackey v. Montrym, 443 U.S. 1, 99 S. Ct. 2612, 61 L. Ed. 2d 321 (1979); City of Redmond v. Bagby, 155 Wn.2d 59, 62, 117 P.3d 1126 (2005). Accordingly, the principal question in this case is what process is due to protect against the erroneous deprivation of that interest.

### Due Process under Mathews v. Eldridge[11]

Yuri argues in the alternative that because "the allegation of criminal fraud is tantamount to civil fraud, the clear, cogent and convincing evidence standard should apply." Br. of Appellant at 18. He analogizes his case to a common law fraudulent representation claim where the clear, cogent, and convincing standard applies. He also repeats his argument that the department's "allegation of criminal misdemeanor fraud" warrants "a heightened standard of review." Appellant's Reply Br. at 13; see Br. of Appellant at 18–21. We disagree.

---

[11] Mathews v. Eldridge, 424 U.S. 319, 348, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

Principles of due process control what process is required, including the proper standard of proof.[12, 13] Procedural due process requires both notice and an opportunity to be heard "'at a meaningful time and in a meaningful manner,'" appropriate to the case. Amunrud v. Bd. of Appeals, 158 Wn.2d 208, 216, 143 P.3d 571 (2006) (quoting Mathews v. Eldridge, 424 U.S. 319, 348, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

Due process is flexible and calls for such procedural protections as the particular situation demands. Mathews, 424 U.S. at 334. To determine the process due, courts balance (1) the private interests involved, (2) the likelihood of erroneous deprivation, and (3) the government interest involved. City of Bremerton v. Hawkins, 155 Wn.2d 107, 110, 117 P.3d 1132 (2005) (citing Mathews, 424 U.S. 319). "A process satisfies minimum constitutional requisites inherently due when it provides adequate safeguards to the citizen confronted by an action instigated against him by the state." Nguyen v. Dep't of Health Med. Quality Assurance Comm'n, 144 Wn.2d 516, 524, 29 P.3d 689 (2001).

The function of a standard of proof is to instruct the fact finder of the degree of confidence our society thinks it should have in the correctness of factual conclusions for a particular type of adjudication. In re A.W., No. 90393-0, 2015 WL 710549 (Feb. 19, 2015) (preponderance of the evidence standard of proof satisfies due process in guardianship proceeding, chapter 13.36 RCW, creating permanency for children in

---

[12] Yuri does not allege a due process violation under our state's constitution. The Washington Supreme Court has held that the state constitution does not afford greater due process protections than the federal constitution. See, e.g., In re Pers. Restraint of Dyer, 143 Wn.2d 384, 394, 20 P.3d 907 (2001) ("Washington's due process clause does not afford broader protection than the Fourteenth Amendment."); State v. McCormick, 166 Wn.2d 689, 699, 213 P.3d 32 (2009).

[13] We note that Yuri's opening brief barely addresses the Mathews analysis.

foster care). To determine whether existing procedures are fundamentally fair and comport with procedural due process requirements, we consider the three Mathews factors.

### 1. Private Interest

This factor "requires identification of the nature and weight of the private interest affected by the official action challenged." City of Redmond v. Moore, 151 Wn.2d 664, 670, 91 P.3d 875 (2004).

In Moore, the court held that the continued use of a driver's license is important because it can significantly affect a person's ability to earn a living and noted the United States Supreme Court's holding that such an interest is "substantial." City of Bellevue v. Lee, 166 Wn.2d 581, 586, 210 P.3d 1011 (2009).

In Scheffel, defendants challenged the revocation of their licenses to drive for being habitual traffic offenders on the basis of multiple offences of driving while under the influence of alcohol. Among other claims, defendants asserted denial of procedural due process under the Habitual Traffic Offenders Act, chapter 46.65 RCW. Rejecting the due process challenge, the court observed that the privilege to drive is always subject to reasonable government control.

> The privilege to operate an automobile is a valuable one and may not be unreasonably or arbitrarily taken away; however, the enjoyment of the privilege depends upon compliance with the conditions prescribed by the law and is always subject to such reasonable regulation and control as the legislature may see fit to impose under the police power in the interest of public safety and welfare.

Scheffel, 82 Wn.2d at 880.

Furthermore, "[t]he duration of any potentially wrongful deprivation of a property interest is an important factor in assessing the impact of official action on the private

interest involved." Mackey, 443 U.S. at 12. Under the licensing scheme here, a person challenging a license suspension is entitled to a formal hearing and subsequent appeal to superior court. An initial decision by the department to suspend a person's privilege to drive is stayed while the formal hearing and superior court appeal are pending. RCW 46.20.329. Thus, the duration of the potential erroneous deprivation is minimal because the statutory scheme provides for a prompt formal evidentiary hearing,[14] and prompt de novo[15] superior court appeal,[16] and the department's suspension decision is stayed during this period. Amunrud, 158 Wn.2d at 217–18 (in determining existence of procedural due process violation under statute suspending commercial driver's license for failure to pay child support, court considered potential duration of deprivation and whether stay of suspension pending outcome is available; court concluded no procedural or substantive due process violation).

Any potential deprivation of Yuri's privilege is not permanent. He is entitled to reinstatement assuming compliance with license requirements for reinstatement. Santosky v. Kramer, 455 U.S. 745, 759, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) (once affirmed on appeal, a decision terminating parental rights is final and irrevocable thus warranting elevated standard of proof).

---

[14] A person whose driving privilege is suspended may request a formal hearing. The department "shall" schedule a time and place for such hearing "as early as may be arranged." RCW 46.20.329.

[15] The term "de novo" means "'[a] new; [a] fresh; [a] second time." Dep't of Motor Vehicles v. Andersen, 84 Wn.2d 334, 339, 525 P.2d 739 (1974) (alterations in original) (quoting Foster v. Carson Sch. Dist. 301, 63 Wn.2d 29, 32, 385 P.2d 367 (1963)).

[16] Any person whose driving privilege is suspended "[has] the right within thirty days" after receiving the decision from a formal hearing to file a notice of appeal in superior court. RCW 46.20.334.

No Washington case authority holds due process requires a heightened burden of proof in a proceeding to suspend or revoke a driver's license. Indeed, the preponderance standard applies to other driver license suspension or revocation proceedings. O'Neill v. Dep't of Licensing, 62 Wn. App. 112, 116, 813 P.2d 166 (1991) (preponderance standard required to suspend a driver's license under implied consent statute, RCW 46.20.308); State v. Malone, 9 Wn. App. 122, 130-31, 511 P.2d 67 (1973) (preponderance standard required to revoke driver's license of habitual traffic offender). The private interest in a licensee's driver's license under the prohibited practices statute, RCW 46.20.291, and the misdemeanor penalty statute, RCW 46.20.0921(1)(e), is no greater than under the implied consent or habitual traffic offender statutes.

## 2. Risk of Erroneous Deprivation

This factor considers "the risk of erroneous deprivation of the interest at stake through the procedures used and the probable value, if any, of additional or substitute safeguards." Moore, 151 Wn.2d at 671. The department's order suspended Yuri's driver's license for 364 days. It "is authorized to suspend the license of a driver upon a showing by its records or other sufficient evidence" that the licensee "[h]as committed one of the prohibited practices relating to drivers' licenses defined in RCW 46.20.0921." RCW 46.20.291(7).

One of the prohibited practices is to "use a false or fictitious name in any application for a driver's license or identicard or to knowingly make a false statement or to knowingly conceal a material fact or otherwise commit a fraud in any such application." RCW 46.20.0921(1)(e). The department has adopted an administrative

regulation that governs the length of a suspension under RCW 46.20.0921(1)(e). WAC 308-104-075 provides in part:

> The department shall suspend, cancel, or deny all driving privileges of a person who has been convicted of or determined by the department to have committed one of the prohibited practices relating to drivers' licenses listed in RCW 40.20.0921 for a period of not less than sixty consecutive days and not more than three hundred sixty-four consecutive days.

As to the length of the suspension, an "agency's determination of sanctions should be accorded considerable judicial deference as it is peculiarly a matter of administrative competence." In re Discipline of Brown, 94 Wn. App. 7, 16, 972 P.2d 101 (1998).[17]

Under Mathews, we consider both the risk of erroneous deprivation resulting from the preponderance standard and the likelihood that an enhanced standard would reduce that risk. Mathews, 424 U.S. at 335.

Yuri fails to identify how the hearing procedures afforded him in this case subject drivers to unreasonable risks of error. Nor does he analyze how an enhanced burden of proof would reduce the risk of erroneous deprivation. He presented no evidence of unreasonable risks of error based on application of the preponderance standard in this case. For example, he claims, "The DOL is engaged in a large volume business and, to keep up with the demand, it has employed a number of crude computer techniques . . . ."[18] Appellant's Reply at 15. Due process does not require an error-free process, so

---

[17] Yuri does not challenge the length of the suspension in this appeal. The department's rationale for the maximum period of suspension was based on the State's claim that Yuri "obtained an original driver's license in his brother's name," renewed it using his brother's name, and continued his 10 years of "fraudulent activity" until the department discovered it.

[18] This assertion is unfounded. We assume he means the facial recognition software. RCW 46.20.037 provides in part:

the mere possibility of an error is insufficient to invalidate the process. Lee, 166 Wn.2d at 585.

As noted above, the statutory scheme relating to challenging the department's license suspension order includes notice and an opportunity for a driver improvement interview, formal hearing, and de novo appeal to superior court. The de novo hearing entails a full and independent judicial, evidentiary, and factual review, which includes the right to a trial by jury on appropriate demand. The licensee may retain an attorney, testify on his own behalf, present witnesses and exhibits, cross-examine witnesses, object to evidence, submit briefs, and make appropriate motions.

In Department of Motor Vehicles v. Andersen, 84 Wn.2d 334, 525 P.2d 739 (1974), the court described the lack of legal and factual complexity inherent to the administrative suspension of a driver's license.

> [T]he mixed fact and law questions and disputable issues revolving about an administrative decision of revocation, suspension, cancellation, or refusal of a motor vehicle driver's license are limited and relatively uncomplicated. Likewise, the result flowing from a given resolution of the relevant and disputable issues is direct and reasonably certain. On the average, resolution of the issues and the ensuing result does not require the exercise of that degree of administrative experience and expertise as is demanded and projected into such administrative or regulatory areas as the utility, banking, tax, ecology, or professional fields. In an implied-consent, revocation situation, for example, the question to be

---

"Facial recognition matching system. (1) The department may implement a facial recognition matching system for drivers' licenses, permits, and identicards. Any facial recognition matching system selected by the department must be used only to verify the identity of an applicant for or holder of a driver's license, permit, or identicard to determine whether the person has been issued a driver's license, permit, or identicard under a different name or names.

"(2) Any facial recognition matching system selected by the department must be capable of highly accurate matching, and must be compliant with appropriate standards established by the American association of motor vehicle administrators that exist on June 7, 2012, or such subsequent date as may be provided by the department by rule, consistent with the purposes of this section." (Boldface omitted.)

resolved, if contested by the licensee, and the result to follow are defined and restricted by statute.

Andersen, 84 Wn.2d at 340. The risk of erroneous deprivation here is minimal as a consequence of the procedures used.

### 3. Governmental Interest

This factor addresses the State's interest in the fiscal and administrative burden that additional or substitute procedural requirements would entail. Mathews, 424 U.S. at 334–35. The department argues that ensuring driver's licenses are authentic implicates public safety and consumer protection concerns because they are used as official identification. Drivers are required to have a valid license in their possession while operating a motor vehicle. RCW 46.20.017. A valid license ensures the state's interest in financial responsibility and competent drivers. Retailers must request identification, including a driver's license, for the purchase of tobacco when there is a question of the purchaser's age. RCW 70.155.090. The legislature found that the falsification of cards is a serious social problem impeding the efficient conduct of commerce and government.[19]

> The legislature finds that the falsification of cards and licenses is a serious social problem creating economic hardship and problems which impede the efficient conduct of commerce and government. The legislature is particularly concerned that the increasing use of false drivers' licenses and identicards to purchase liquor, to cash bad checks, and to obtain food stamps and other benefits is causing the loss of liquor licenses, the loss of jobs, the loss of income, and the loss of human life in addition to significant monetary losses in business and government. It is the purpose of section 2 of this act to require an effective means of rendering drivers' licenses and identicards as immune as possible from

---

[19] RCW 46.20.114 provides:
"Preventing alteration or reproduction. The department shall prepare and issue drivers' licenses and identicards using processes that prohibit as nearly as possible the alteration or reproduction of such cards, or the superimposing of other photographs on such cards, without ready detection." (Boldface omitted.)

-18-

alteration and counterfeiting in order to promote the public health and safety of the people of this state.

Laws of 1977, 1st Ex. Sess., ch. 27, § 1. Furthermore, the State has a compelling interest in keeping unsafe drivers off the roadways. Moore, 151 Wn.2d at 677. A license obtained using a false or fictitious name undermines these compelling state interests.

Yuri acknowledges the department's interest in protecting the identity of its citizens but maintains that reasonable regulation is not undermined by imposing the enhanced civil standard. Appellant's Reply Br. at 16. We are not persuaded by this assertion. As discussed above, the state has an interest in public safety and consumer protection through ensuring the authenticity of driver's licenses. The state also has an administrative and fiscal interest in reducing the cost and burden of determining the authenticity of driver's licenses while still affording licensees significant procedural protections. "[T]he [state] does have an interest in the efficient and cost-effective administration of the driver's license system . . . ." Lee, 166 Wn.2d at 589. The state's interest weighs toward using the preponderance of the evidence standard.

Civil Fraud

Yuri also argues that the common law fraud standard of clear, cogent, and convincing evidence applied to his license suspension proceeding. We disagree, as discussed above. In addition, Yuri's use of his brother's name in his 2009 application for a driver's license is a prohibited practice under RCW 46.20.0921(1)(e)'s misdemeanor penalty statute. This statute requires proof of only one of the acts defined in subsection (1)(e), "use a false or fictitious name . . . or to knowingly make a false statement or to knowingly conceal a material fact or otherwise commit a fraud . . . ."

(Emphasis added.) The statue is written in the disjunctive. We presume "or" is used in a statute disjunctively unless there is clear legislative intent to the contrary. Guijosa v. Wal-Mart Stores, Inc., 101 Wn. App. 777, 790, 6 P.3d 583 (2000). Although Yuri's assertion that the department must prove civil fraud is questionable, we need not address that issue. The plain reading of the misdemeanor penalty statute, RCW 46.20.0921(1)(e), authorizes the department to suspend Yuri's license based on any one of the prohibited practices, including the use of a false or fictitious name. Here, the court properly concluded that based on substantial evidence discussed below, the preponderance of the evidence establishes Yuri used a false or fictitious name in his application for a driver's license. He used his brother's name when he applied to renew his 2009 application.

Substantial Evidence

Yuri contends that the evidence presented below supports only one valid conclusion—the department lacked sufficient evidence to establish he used a false or fictitious name in his 2009 license application. Yuri challenges the following findings of fact:

2. On January 28, 2009, Yuri Prostov appeared in person at the Kirkland Licensing Center and presented himself as Geirman Prostov. Yuri requested and was issued a renewal WA driver's license in the false name of Geirman Prostov.

. . . .

7. Mr. Yuri Prostov's own testimony and the court['s] own visual observations confirm that Mr. Yuri Prostov has an identifiable scar that extends from the right side of his upper lip to the bottom of his nose. His twin brother, Geirman Prostov, has no such scar. Mr. Yuri Prostov's nose is also straighter than Geirman Prostov's nose, which bends slightly to the left.

8. Visual comparison of true and correct photos of Yuri Prostov (Exhibit 1R, 1S), the true and correct photo of Geirman Prostov (Exhibit 1V), and the driver's license photo at issue (Exhibit 1T, 1U) confirms that the driver's license

-20-

issued on January 28, 2009 (Exhibit 1T, 1U), issued under the name of Geirman Prostov contains the photograph of Yuri Prostov.

9. The court finds that the license issued under Geirman's name in Exhibit 1T, 1U is significantly different from the photo of Geirman in Exhibit 1V. Rather, the photo in Exhibit 1T, 1U contains the same identifiable scar and nose structure as present on the photos of Yuri Prostov found in Exhibits 1R, 1S.

10. On August 7, 2012, following the investigation, the Department sent an Order of Suspension to Yuri Prostov, ordering him to stop driving a motor vehicle within the State on August 27, 2012. The Order notified Mr. Prostov that his driving privilege was suspended for 364 days for knowingly concealing a material fact or knowingly making a false statement in an application for a driver's license, instruction permit or identification card.

11. Yuri Prostov requested an administrative interview to consider the suspension of his driving privilege. After an administrative interview, a hearing officer from the Department upheld the suspension.

12. Yuri Prostov appealed the Department's order to the superior court.

When the trial court has weighed the evidence, our review is limited to determining whether the trial court's findings are supported by substantial evidence, and, if so, whether the findings in turn support the conclusions of law. Shelden v. Dep't of Licensing, 68 Wn. App. 681, 684-85, 845 P.2d 341 (1993); Ridgeview Props. v. Starbuck, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). Substantial evidence is evidence sufficient to persuade a rational, fair-minded person of the finding's truth. Maplewood Estate, Inc. v. Dep't of Labor & Indus., 104 Wn. App. 299, 304, 17 P.3d 621 (2000). This court need only consider whether the evidence most favorable to the prevailing party supports the challenged findings, even if the evidence is in conflict. Shelden, 68 Wn. App. at 684–84. The court must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Thomas, 150 Wn.2d 821, 874–75, 83 P.3d 970 (2004). It is not the role of appellate courts to weigh and evaluate conflicting evidence. Burnside v. Simpson Paper Co., 66 Wn. App. 510, 832 P.2d 537 (1992), aff'd, 123 Wn.2d 93, 864 P.2d 937 (1994).

At trial, Yuri identified and confirmed that certain exhibits admitted into evidence and gathered from the DOL records were accurate photos of himself and his brother. He confirmed the existence since 2001 of a scar on the right side of his upper lip. He also acknowledged that his brother had no facial scar.

The court noted the good quality of these color DOL photos. The trial court compared the physical features depicted in the DOL photos of Yuri and his brother. It observed that Yuri's facial scar was apparent in these photos. Finally, the court's conclusion that Yuri used a false or fictitious name to obtain the 2009 driver's license was based on its own in court observations of Yuri:

> Mr. Yuri Prostov's own testimony and the court['s] own visual observations confirm that Mr. Yuri Prostov has an identifiable scar that extends from the right side of his upper lip to the bottom of his nose. His twin brother, Geirman Prostov, has no such scar. Mr. Yuri Prostov's nose is also straighter than Geirman Prostov's nose, which bends slightly to the left.

Yuri claims, "The DOL offered no other evidence other than the few photos, and the DOL's allegations were firmly denied by Mr. Prostov," equating this case to a "he said, she said" situation. Br. of Appellant at 25. Yuri's substantial evidence challenge amounts to argument over the weight of the evidence and the credibility of witnesses. Our review of the record evidence establishes that substantial evidence supports the trial court's determination in this case. For example, the court observed, "The scar is quite visible in Exhibit T." RP at 172. Exhibit T is a reproduced and enlarged color photo of the 2009 driver's license at issue here. It bears the photo image of Yuri but the printed name, address, and purported signature of Geirman, Yuri's brother. Yuri acknowledged he has a facial scar and Geirman does not. We decline to substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility. Greene

v. Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999). Yuri's substantial evidence claim fails. The trial court's findings are supported by substantial evidence and in turn support the conclusion that Yuri used a false or fictitious name in his 2009 license application.

Essential Element

Yuri contends that the department "failed to prove an essential element of the criminal allegation—an 'application' for licensure. There was no proof of a fraudulent 'application' for licensure or identicard, which is a required element for proving the DOL's allegation of criminal fraud." Br. of Appellant at 26 (boldface and capitalization omitted). We question whether this issue is properly preserved on appeal. The record shows Yuri never raised the issue below. Yuri fails to cite the record where the court ruled on this issue. Generally, an appellate court will not consider issues raised for the first time on appeal. RAP 2.5(a). A party must inform the court of the rules of law it wishes the court to apply and offer the trial court an opportunity to correct any error. Smith v. Shannon, 100 Wn.2d 26, 37, 666 P.2d 351 (1983). "While an appellate court retains the discretion to consider an issue raised for the first time on appeal, such discretion is rarely exercised." Karlberg v. Otten, 167 Wn. App. 522, 531, 280 P.3d 1123 (2012). Yuri fails to argue why an exception to this rule applies in this case.[20] This claim fails nonetheless because it rests on the erroneous assumption that this is a criminal proceeding. There is substantial record evidence that Yuri appeared at the

_____

[20] Yuri's reply brief includes, for the first time, copies of unauthenticated portions of the DOL's policy manual. Appendix A. We decline to consider these materials. Nothing in our record shows that these materials were submitted to the trial court. And submitting these materials in his reply brief is fundamentally unfair to the department. It deprived the department of an opportunity to respond.

Kirkland Licensing Center and requested to renew his driver's license using his brother's name. Laurie Provoe's uncontested testimony established that a paper application to renew a driver's license is not required. Appearing in person and orally requesting a license constitutes an application under the department's practice. Under RCW 46.20.0921(1)(e), it is a violation to use a false or fictitious name in "any application." Oral renewal application here satisfies this statutory requirement. This claim fails.

### Jury Trial Right

Yuri claims that he was denied his constitutional right to trial by jury.[21] We disagree. De novo review by the trial court includes the right to a trial by jury. Dep't of Motor Vehicles v. Andersen, 84 Wn.2d 334, 340, 525 P.2d 739 (1974).

Yuri waived this issue for review because he did not raise it with the trial court. Failure to raise the jury trial issue to the trial court waives the issue on appeal. State v. Wicke, 91 Wn.2d 638, 646, 591 P.2d 452 (1979). Yuri wrote in his trial court brief, "No party has requested a jury trial and, therefore, it is a bench trial with de novo review." The case schedule order in this case notified the parties about the various deadlines. KCLCR 4. It required the filing of a jury demand no later than June 5, 2013.

Civil Rule 38 also requires Yuri to serve a jury trial demand on the parties, file the demand with the court clerk, and pay a jury fee. Yuri did none of these things.[22] Under

---

[21] Yuri arguably invited this error. Under the invited error doctrine, a party may not set up an error at trial and then complain of it on appeal. In re Pers. Restraint of Thompson, 141 Wn.2d 712, 723, 10 P.3d 380 (2000). The doctrine applies when a party takes an affirmative and voluntary action that induces the trial court to take an action that party later challenges on appeal. Thompson, 141 Wn.2d at 723-24.

CR 38(d),[23] this failure constitutes waiver of the right to a jury trial. As discussed above, because the license suspension proceeding is civil in nature, we decline to address Yuri's further contention that CrR 6.1(a) requires a "written waiver of a jury trial, and has consent of the court."

### Failure to Call Witness

Yuri also claims the trial court "erred when it considered the DOL's [Department of Licensing] failure to call GP [Geirman] as a factor weighing against Mr. Prostov [Yuri]." Br. of Appellant at 3. He provides no argument and cites no authority. The failure of an appellant to provide argument and citation of authority in support of an assignment of error precludes appellate consideration of an alleged error.[24] Avellaneda v. State, 167 Wn. App. 474, 482 n.5, 273 P.3d 477 (2012). A party abandons assignments of error unsupported by argument and will not be considered on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); RAP 10.3(a)(6). We decline to consider the argument here.

---

[22] According to the department, Yuri faxed it a pro se letter entitled "Petition For A Jury Trial." Br. of Resp't at 39 n.10. This document does not appear in the record.

[23] CR 38(d) provides in part:
The failure of a party to serve a demand as required by this rule, to file it as required by this rule, and to pay the jury fee required by law in accordance with this rule, constitutes a waiver by him of trial by jury.

[24] Yuri also claims, "The trial court erred by not dismissing the case after it found that the DOL failed to show any motive or other mens rea to support its claims." Br. of Appellant at 3–4. He cites no authority and presents no argument related to this assignment of error in his brief. We decline to address this claim. Cowiche Canyon, 118 Wn.2d at 809; Avellaneda, 167 Wn. App. at 482 n.5.

Equal Access to Justice Act

Yuri contends the trial court erred by denying him attorney fees under Washington's equal access to justice act (EAJA), RCW 4.84.350.

The EAJA requires a court to award attorney fees to a prevailing party where certain conditions are met:

> Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. A qualified party shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought.

RCW 4.84.350(1). A trial court's award of attorney fees under the EAJA is reviewed for abuse of discretion. Raven v. Dep't of Soc. & Health Servs., 177 Wn.2d 804, 832, 306 P.3d 920 (2013). Yuri claims he prevailed below because the court found insufficient evidence to support the alleged 2001 fraud. Even assuming without deciding that the EAJA applies here, Yuri appealed and the court affirmed his license suspension. He did not obtain the relief he sought. The trial court properly denied Yuri's request to award attorney fees under the EAJA.[25]

## CONCLUSION[26]

Because the preponderance standard of proof in this driver's license suspension proceeding under RCW 46.20.291 and RCW 46.20.0921(1)(e) strikes a fair balance

---

[25] Because Yuri is not the prevailing party, we decline to award fees under RAP 18.1.

[26] Yuri moved to strike portions of the department's briefing. Generally, we decline to grant such motions so long as the moving party has an opportunity to include argument in its briefing. Engstrom v. Goodman, 166 Wn. App. 905, 909 n. 2, 271 P.3d 959 (2012). Because Yuri had this opportunity, we decline to grant the motion to strike.

between the interests of the state and a licensee and adequately conveys to the fact finder the level of certainty about the factual conclusions to satisfy due process, and because Yuri's remaining challenges fail, we affirm his license suspension. We also affirm the trial court order denying his request for attorney fees.

WE CONCUR: