[No. 81473-2. En Banc.]
Argued November 18, 2008.     Decided July 9, 2009.

THE CITY OF BELLEVUE, *Petitioner*, v. SHIN H. LEE ET AL., *Respondents*.

---

[7] The State concedes that this is the appropriate remedy for an insufficiency of evidence violation. Br. of Resp't at 12 n.6.

*Lori M. Riordan, City Attorney*, and *Jill M. Thiele, Assistant*, for petitioner.

*Stephen A. Lotzkar* (of *Stein Lotzkar & Starr, PS*) and *Joshua S. Schaer* (of *Law Offices of James Egan, PLLC*), for respondents.

*Diane L. McDaniel, Assistant Attorney General*, on behalf of the Attorney General of Washington, amicus curiae.

¶1 OWENS, J. — The Department of Licensing (DOL) suspended the respondents' driver's licenses for nonpayment of traffic citations in accordance with the procedures outlined in RCW 46.20.245 and 46.20.289. Respondents assert that the DOL's procedures did not meet due process requirements because the drivers were not given an in-person administrative hearing. We invalidated a prior set of procedures because drivers were not given any sort of hearing prior to the suspension of licenses, *City of Redmond v. Moore*, 151 Wn.2d 664, 91 P.3d 875 (2004), but we hold that the new procedures, which include an administrative hearing that allows drivers to submit evidence, meet due process requirements.

## FACTS

¶2 Under RCW 46.20.289, the DOL suspends a driver's license when it receives notice from a court that the driver

has failed to respond, appear, or pay, or otherwise failed to comply with the terms of a traffic citation. When the DOL receives documentation from a court that would result in a suspension, it must give the driver 45 days written notice prior to the suspension. RCW 46.20.245(1). A driver may request an administrative review within 15 days of receiving notice.[1] RCW 46.20.245(2). The suspension is stayed during the review process. RCW 46.20.245(2)(d).

¶3 The administrative review consists of an internal review of all documents submitted to the DOL. RCW 46.20.245(2)(a). The administrative review is not in person or via telephone, unless requested by the driver and granted at the discretion of the DOL. *Id.* The administrative review addresses only (1) "[w]hether the records relied on by the department identify the correct person" and (2) "[w]hether the information transmitted from the court or other reporting agency or entity regarding the person accurately describes the action taken by the court or other reporting agency or entity." RCW 46.20.245(2)(b)(i), (ii). The burden is on the person requesting review to show by a preponderance of the evidence that the person is not subject to the suspension. RCW 46.20.245(2)(c).

¶4 Using the above procedures, the DOL suspended the respondents' driver's licenses for failure to pay a traffic citation, and the respondents were later cited for driving with a suspended license. Respondents did not request an administrative review. The respondents then challenged the DOL's procedures for suspending their licenses, asserting that the procedures did not provide a meaningful opportunity to be heard and therefore did not meet due process requirements. The district court held that the procedures were constitutional, but the superior court reversed, holding that the procedures did not meet due process requirements. The city of Bellevue appealed the superior court's ruling directly to this court, contending

---

[1] The DOL can also grant administrative review if requested more than 15 days after notice if the driver shows good cause. RCW 46.20.245(2).

that the revised DOL procedures are constitutional because they provide both notice and an opportunity to be heard.

## ISSUE

¶5  Do the license suspension procedures outlined in RCW 46.20.245 and 46.20.289 meet due process requirements?

## STANDARD OF REVIEW

¶6  We review the constitutionality of a statute de novo. *State v. Abrams*, 163 Wn.2d 277, 282, 178 P.3d 1021 (2008). A statute is presumed to be constitutional, and the party challenging the constitutionality of a statute must prove its unconstitutionality "beyond a reasonable doubt." *Island County v. State*, 135 Wn.2d 141, 146, 955 P.2d 377 (1998).

## ANALYSIS

¶7  In cases involving the potential deprivation of a private interest by the government, this court applies the *Mathews* balancing test to ensure that due process requirements are met. *Gourley v. Gourley*, 158 Wn.2d 460, 467-68, 145 P.3d 1185 (2006) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). The three factors of the *Mathews* test are (1) the potentially affected interest; (2) the risk of an erroneous deprivation of that interest through the challenged procedures, and probable value of additional procedural safeguards; and (3) the government's interest, including the potential burden of additional procedures. *Mathews*, 424 U.S. at 335. Due process does not require an error-free process, so the mere possibility of error is insufficient to invalidate the process. *Mackey v. Montrym*, 443 U.S. 1, 13, 99 S. Ct. 2612, 61 L. Ed. 2d 321 (1979).

¶8  In 2004, this court applied the *Mathews* test to the driver's license suspension procedures and held that they

violated due process because they did not provide adequate procedural safeguards to ensure against the erroneous deprivation of a driver's license. *Moore*, 151 Wn.2d at 677. Those procedures did not provide for any sort of administrative hearing prior to suspension. *Id.* at 666-67. In response to the court's decision in *Moore*, the legislature changed the driver's license suspension procedures to provide for an administrative hearing prior to suspension, if requested by the affected driver. LAWS OF 2005, ch. 288, §§ 5, 6. We now apply the *Mathews* test to the new procedures to determine if they satisfy due process.

## I. The First *Mathews* Factor: The Private Interest Affected

¶9 The first *Mathews* factor is "the nature and weight of the private interest affected by the official action challenged." *Moore*, 151 Wn.2d at 670. In *Moore*, this court held that the continued use of a driver's license is important because it can significantly affect a person's ability to earn a living and noted the United States Supreme Court's holding that such an interest is " 'substantial.' " *Id.* at 671 (quoting *Mackey*, 443 U.S. at 11). That same substantial privacy interest is present in this case.

## II. The Second *Mathews* Factor: The Risk of Erroneous Deprivation and Probable Value of Additional Procedures

¶10 The second *Mathews* factor is "the risk of erroneous deprivation of the interest at stake through the procedures used and the probable value, if any, of additional or substitute safeguards." *Id.* In *Moore*, we held that "the fatal defect" was that there was no administrative hearing prior to suspension and that, therefore, drivers could have their driver's licenses erroneously suspended due to ministerial errors. *Id.* at 672, 675. As described below, the new administrative review is specifically designed to correct such ministerial errors, thereby reducing the risk of erroneous deprivation described in *Moore* and also reducing any potential value of additional procedures.

## A. *Risk of Erroneous Deprivation*

¶11 Respondents assert that the administrative review process is unconstitutional because it does not adequately address the risk of ministerial errors such as mis-identification or a wrongly credited payment, but respondents never presented any evidence that such errors are widespread or that any such errors are not able to be resolved through the current system. In fact, respondents do not cite even one example of a ministerial error that was not resolved through the current system.[2]

¶12 Respondents contend that the DOL will examine only its own records, but the statute states that the review will consist of documents "submitted or available to the department." RCW 46.20.245(2)(a). There is nothing stopping a driver from submitting documents demonstrating the ministerial error; indeed that is the purpose of the administrative review. The statute clearly contemplates that the driver will submit such documentation, as demonstrated by subsection (2)(c), which states that the driver "has the burden of showing by a preponderance of the evidence that the person is not subject to the withholding of the driving privilege."

¶13 Further, DOL policy states, "A specialist will review all documents received by DOL on the pending action[, c]heck Imaging documents along with the court records, review the record for accuracy and provide a written response of the results. *It is the customer* [sic] *responsibility to provide any other relevant information.*" Clerk's Papers at 79 (emphasis added). In the case of ministerial error, this review process is designed to catch

---

[2] Respondents cite only two incidents that occurred when no review system existed. These two examples involve inaccurate court records submitted to the DOL, and the respondents never presented evidence that showed beyond a reasonable doubt that these two situations could not be resolved through the new review system created to address ministerial errors.

and resolve that error. Respondents have presented no evidence that it will not successfully do so.

### B. *Probable Value of Additional Procedures*

¶14 Respondents also fail to explain how additional procedures, such as an in-person hearing, would lower the risk of erroneous deprivation. Respondents are unclear as to what errors they believe could be resolved through an in-person hearing, and respondents have provided no evidence that there is any additional value from such a hearing.

¶15 When there is a ministerial error (although respondents present no evidence of such error), there is no reason to believe that the error cannot be easily resolved through the current administrative review process. As noted above, the current process allows drivers to submit evidence of any errors. The DOL's suspension process involves processing paperwork, not fact finding, and therefore there is no reason that an in-person hearing will resolve ministerial errors that an administrative review will not. *See Dixon v. Love*, 431 U.S. 105, 113-14, 97 S. Ct. 1723, 52 L. Ed. 2d 172 (1977) (holding that the risk of erroneous deprivation of a driver's license was low when the suspension process was largely automatic and that an in-person hearing might make a driver feel better about being heard but would not actually contribute to protecting the driver's rights).[3] Respondents failed to cite any examples of errors where additional procedural safeguards would lower the risk of erroneous deprivation.

¶16 Respondents also contend that due process requires the ability to present testimony and cross-examine witnesses. However, respondents have not shown that this is

---

[3] Respondents seem to contend that the "right to be heard" means the right to deliver information orally to the fact finder. There is no reason that due process cannot be achieved effectively through written communication in situations such as this, where the suspension process is automatic and involves processing paperwork. The word "hearing" can include this type of review process as long as the driver has the right to be heard (achieved here through the submission of corrective documents to the DOL).

required in order to minimize the risk of error in this largely automatic process. " '[T]he quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error.' " *In re Pers. Restraint of McCarthy*, 161 Wn.2d 234, 241-42, 164 P.3d 1283 (2007) (alteration in original) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 13, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979)). There are many situations where the ability to present live testimony and cross-examine witnesses are necessary to satisfy due process. This is not one of them.

## III.    The Third *Mathews* Factor: The State's Interest

¶17 The third *Mathews* factor is "the State's interest in the fiscal and administrative burden that additional or substitute procedural requirements would entail." *Moore*, 151 Wn.2d at 676. As in *Moore*, the city has not presented evidence of the burden caused by additional procedures. *Id.* at 677. However, the city does have an interest in the efficient and cost-effective administration of the driver's license system, as well as ensuring that drivers appear, pay, and comply with the terms of traffic citations. *Id.* at 687 (Bridge, J., dissenting). When added to the low risk of mistaken license suspensions and the low (if any) value of additional procedures, we hold that the *Mathews* factors weigh in favor of the city and uphold the current license suspension procedures.

## CONCLUSION

¶18 Because the DOL's procedures provide both notice and a meaningful opportunity to be heard, they meet due process requirements. We reverse the superior court and uphold the driver's license suspension procedures in RCW 46.20.245 and 46.20.289.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, CHAMBERS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.

¶19 SANDERS, J. (dissenting) — The majority holds the driver's license suspension procedures in RCW 46.20.245 and 46.20.289 comply with due process because the procedures provide notice and a meaningful opportunity to be heard. Majority at 583-85. In *City of Redmond v. Moore*, 151 Wn.2d 664, 677, 91 P.3d 875 (2004) we held the statutory procedures under former RCW 46.20.289 (2002) and former RCW 46.20.324(1) (1965) were unconstitutional because they violated procedural due process. In response to that decision, the legislature amended RCW 46.20.289 and enacted RCW 46.20.245 to supposedly cure constitutional deficiencies identified in *Moore*.

¶20 In this action challenging RCW 46.20.245 and the procedures afforded a driver facing suspension for nonpayment of a traffic infraction, the superior court held that RCW 46.20.245 failed to cure the statutory deficiencies, finding it unconstitutional. Direct review was granted, and the majority reversed. I disagree with the majority and would affirm the superior court to hold RCW 46.20.245 unconstitutional.

¶21 I agree with the majority that we must apply the *Mathews*[4] balancing test to ensure the due process requirements are met, but disagree with the majority's conclusion "that the *Mathews* factors weigh in favor of the city." Majority at 589. The United States Supreme Court has stated, "The fundamental requirement of due process is the opportunity to be *heard* 'at a meaningful time and in a meaningful manner.' " *Mathews*, 424 U.S. at 333 (emphasis added) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). The majority correctly finds that one has a substantial privacy interest in one's driver's license under the first *Mathews* factor. *See id.* at 335. However under the second factor, contrary to what the majority asserts, the new administrative review does not fix " '[t]he fatal defect' " identified in *Moore*—the lack of an

---

[4] *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

administrative hearing prior to suspension. *Moore*, 151 Wn.2d at 672 (quoting *Warner v. Trombetta*, 348 F. Supp. 1068, 1071 (M.D. Pa. 1972)).

¶22 RCW 46.20.245 provides that a person facing suspension may request a predeprivation administrative *review*, not a *hearing*, to correct any ministerial errors, the request of which stays the suspension. The statute also permits a postdeprivation appeal, which does not stay the suspension. The flaw remaining in the current RCW 46.20.289 is that it requires that "[t]he department *shall* suspend all driving privileges of a person when the department receives notice from a court . . . that the person has failed to . . ." respond, appear, pay, or comply with a notice of traffic infraction. No adequate basis exists under the statute to challenge the validity of such court notification.

¶23 Here, following notice from a court, the Department of Licensing (DOL) mailed a driver facing suspension a letter informing the driver of the suspension. Clerk's Papers (CP) at 169. This notice informs the driver (1) when his driving privilege will be suspended, (2) whom he may call or write to determine how to avoid suspension, and (3) how to appeal the suspension. The notice directs the driver desiring an administrative review to "return the enclosed form or submit a written request," but the form does not permit the driver to request an in-person hearing to challenge the basis for the suspension. *Id.*

¶24 RCW 46.20.245 provides for an internal document review by DOL. But such review is unable to address any erroneous deprivations discussed in *Moore*, 151 Wn.2d at 673 (misinformation in DOL documents causes erroneous eight-month suspension; false identification by DOL causes erroneous suspension for over one month). An internal review of the DOL's documents results in a review of the same potential erroneous documents that necessitated a hearing to prevent erroneous deprivation in the first place. *See* RCW 46.20.245(2)(a) ("[A]dministrative review . . . shall consist solely of an internal review of documents and records submitted or available to the department . . . ."). For

example, if a person submitted proof that the fine had been paid or that he or she was not the person who committed the infraction, it makes no difference to DOL when deciding whether to suspend the person's license.

¶25 The DOL agent's testimony confirmed the inadequacy of the legislature's attempt to correct the statute. The representative testified a driver facing suspension does not have the right to request something other than the document review prior to DOL's suspending his or her license. CP at 121 (stating that a "hearing" is reserved for revocation proceedings and an "interview," or document review, is for suspension proceedings). The DOL representative also testified a person facing suspension could submit any outside evidence to the department to facilitate correcting ministerial errors. But the letter DOL mails to a person facing suspension does not inform the person of this right. This process does not adequately guard against the risk of erroneous deprivation of the important private interest in a driver's license. Here, the second *Mathews* factor weighs in favor of Shin Lee. *See Mathews*, 424 U.S. at 334-35.

¶26 A hearing must be meaningful in both time and the opportunity to be *heard*. *Id.* at 333. But an administrative review that gives no opportunity to rebut the basis for the suspension cannot be characterized as meaningful. These procedural "safeguards" remain inadequate and fail to address the concerns raised in *Moore*, 151 Wn.2d 664, and the requirements for the opportunity to be heard, which was mandated by the United States Supreme Court in *Mathews*, 424 U.S. 319. By failing to provide a driver a meaningful opportunity to challenge the suspension, the risk of erroneous deprivation remains as it was in *Moore*.

¶27 The final factor *Mathews* considers is the State's interest in the fiscal and administrative burden that additional or substitute procedural requirements would entail. *Id.* at 334-35. The majority asserts, "[T]he city does have an interest in the efficient and cost-effective administration of the driver's license system, as well as ensuring that drivers appear, pay, and comply with the terms of traffic citations."

Majority at 589. But the majority overlooks our analysis of this factor in *Moore*. As the majority asserts, and as we held in *Moore*, there is no evidence in the record of the potential cost to provide additional procedures. *Id.*; *Moore*, 151 Wn.2d at 677. We were not persuaded in *Moore*, nor should we be here, that the burden of providing hearings to individuals whose licenses were suspended outweighed the risk of error and benefit of providing hearings to correct errors. *Moore*, 151 Wn.2d at 677.

¶28 A more appropriate legislative fix would afford a driver a meaningful opportunity to address, in person, (1) whether the DOL records correctly identified the driver and (2) whether the information the DOL received from the court accurately describes the action it took. A proper presuspension hearing for a driver seeking to challenge the suspension is not complicated. Such a hearing would involve determining (1) whether he or she received the infraction and (2) whether he or she failed to respond, appear, pay, or comply with the notice of infraction. This type of procedure is provided in other "types" of license suspension proceedings. Little, if any, additional administrative burden exists to negate this type of hearing here.

¶29 RCW 46.20.245 does not afford drivers facing a license suspension minimal due process. As aforementioned, RCW 46.20.245 fails to cure the statutory deficiencies identified in *Moore*.

¶30 I dissent.