FAIRHURST, C.J. (dissenting)
¶ 44 I dissent because Christal Fields has failed to meet her burden of showing that the Department of Early Learning (DEL)1 violated her due process rights. In arguing that procedural due process requires DEL to give her an individualized hearing, both Fields and the lead opinion conflate procedural and substantive due process. Fields' claim is not that there is a risk that the rule permanently disqualifying people with certain criminal convictions on the director's list will be erroneously applied to her. She admits that she has a conviction for a crime on the director's list. Instead, her argument is that this rule is *1010overinclusive and therefore there is a risk that she will be deprived the right to provide childcare even though she may not pose a risk to children. Because there was no risk that the rule would be erroneously applied to her in the proceedings below and because she was able to bring her constitutional challenge to the rule in court, her procedural due process rights were satisfied.
¶ 45 Fields' true claim is one of substantive due process. On that claim I would find that she has failed to meet the heavy burden of showing that the decision to permanently disqualify her from providing childcare services based on her conviction for the violent crime of attempted robbery is not rationally related to the legitimate government interest in protecting children. Accordingly, I would affirm the Court of Appeals.
I. ANALYSIS
A. Standard of review
¶ 46 Fields claims that former WAC 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 (2015) violates her procedural and substantive due process rights under the Fourteenth Amendment to the United States Constitution.2 We review the Court of Appeals ruling on this issue de novo. Amunrud v. Bd. of Appeals , 158 Wash.2d 208, 215, 143 P.3d 571 (2006).
B. Fields' procedural due process rights were not violated because there was no risk of the rule being erroneously applied to her
¶ 47 The due process clause of the Fourteenth Amendment to the United States Constitution has both substantive and procedural components. See 2 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 14.6(a)(i), (ii), at 722-25 (5th ed. 2012). Procedural due process sets limitations on the process the government must provide before depriving an individual of liberty or property interests. See Mathews v. Eldridge , 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Substantive due process, on the other hand, limits the rules that the government may adopt governing these deprivations. See Sintra, Inc. v. City of Seattle , 119 Wash. 2d 1, 21, 829 P.2d 765 (1992). Fields' right to practice her chosen profession is a liberty interest protected by due process. Amunrud , 158 Wash.2d at 219, 143 P.3d 571 (explaining that "pursuit of an occupation or profession is a liberty interest protected by the due process clause").
¶ 48 However, the hearings Fields has been given clearly satisfy the requirements of procedural due process. Procedural due process guarantees only that individuals have notice and the opportunity to be heard to contest whether the rule does apply to them, not whether it should. Fields had the opportunity to request reconsideration by the licensing supervisor, to appeal her disqualification to the Office of Administrative Hearings, and to challenge her disqualification in superior court as a violation of her substantive due process rights.3 The fact that she was not able to challenge the constitutionality of this rule within the administrative process itself is not a procedural due process violation.
¶ 49 Under Mathews , courts consider three factors in determining whether the process afforded to an individual was sufficient to satisfy the due process clause:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and *1011administrative burdens that the additional or substitute procedural requirement would entail.
424 U.S. at 335, 96 S.Ct. 893 ; see also City of Bellevue v. Lee , 166 Wash.2d 581, 585, 210 P.3d 1011 (2009). These factors weigh against finding a procedural due process violation in this case.
1. Fields has a substantial private interest in her ability to work in childcare
¶ 50 Fields' interest in pursuing childcare as a profession is not in dispute here. Fields has demonstrated a passion for working in childcare and has invested heavily in the pursuit of her chosen occupation. See Am. Suppl. Br. of Appellant at 6. The fulfillment that she finds from this work is clear from the briefing and argument. See id.
¶ 51 The personal interest at stake here is particularly weighty because the decision made by DEL is not temporary and, instead, will permanently disqualify her from working in her chosen profession.4 See Amunrud , 158 Wash.2d at 217, 143 P.3d 571 (noting the length of deprivation has a factor in weighing the private interest at stake). Therefore, the first Mathews factor weighs in favor of affording her substantial process. However, the process she was given here was sufficient because there was no risk of erroneous deprivation.
2. There is no risk of erroneous deprivation because Fields has admitted that she has a permanently disqualifying conviction
¶ 52 The lead opinion claims that the inability of Fields to challenge her disqualification at the administrative level violated procedural due process. The lead opinion admits that "[t]here is no question that Fields received sufficient procedures" to ensure that the law as written was accurately applied to Fields. Lead opinion at 1003. This is because the rule is not that DEL prohibits anyone who poses a danger to children from working at a licensed childcare facility. The rule is that DEL prohibits anyone convicted of a permanently disqualifying crime from working at a licensed childcare facility, and Fields has admitted that she has been convicted of such a crime.
¶ 53 However, the lead opinion believes that there was a high risk that DEL would disqualify Fields from providing childcare services erroneously, i.e., that she would be disqualified despite not posing a danger to children. The lead opinion contends that because Fields may not pose a danger to children, procedural due process demands that she be able to challenge the application of this rule to her in the administrative process. But "if DEL's regulations prevent [Fields] from pursuing her chosen occupation without a rational basis for doing so," lead opinion at 1004-05, then the regulations violate substantive due process, not procedural due process. Whether or not this rule is arbitrary, advances the interests of the State, or is otherwise a good idea has no part in a procedural due process analysis:
Procedural due process guarantees only that there is a fair decision-making process before the government takes some action directly impairing a person's life, liberty or property. This aspect of the due process clauses does not protect against the use of arbitrary rules of law which are the basis of those proceedings. It is only necessary that a fair decision-making process be used; the ultimate rule to be enforced need not be a fair or just one.
ROTUNDA & NOWAK , supra , at 722 (emphasis added).
¶ 54 Procedural due process does not require an agency to hear a constitutional challenge within the administrative process. In *1012Dixon v. Love , the United States Supreme Court held that the decision to suspend the license of a commercial truck driver before there was a full hearing did not violate procedural due process, explaining that
[u]nder the Secretary's regulations, suspension and revocation decisions are largely automatic. Of course, there is the possibility of clerical error, but written objection will bring a matter of that kind to the Secretary's attention. In this case appellee had the opportunity for a full judicial hearing in connection with each of the traffic convictions on which the Secretary's decision was based. Appellee has not challenged the validity of those convictions or the adequacy of his procedural rights at the time they were determined. Since appellee does not dispute the factual basis for the Secretary's decision, he is really asserting the right to appear in person only to argue that the Secretary should show leniency and depart from his own regulations. Such an appearance might make the licensee feel that he has received more personal attention, but it would not serve to protect any substantive rights. We conclude that requiring additional procedures would be unlikely to have significant value in reducing the number of erroneous deprivations.
431 U.S. 105, 113-14, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977) (emphasis added) (footnote and citation omitted); cf. Cleveland Bd. of Educ. v. Loudermill , 470 U.S. 532, 544 n.9, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (finding that an individualized hearing was required by due process when the reason for the employee's termination was arguable because it "turned not on the objective fact that he was an ex-felon or the inaccuracy of his statement to the contrary, but on the subjective question whether he had lied on his application form").
¶ 55 Like in Dixon , the decision to disqualify Fields is automatic under DEL rules once she admitted that she had a conviction for attempted robbery. Fields is arguing for the right to appear in person in the administrative process to argue that DEL should show leniency and depart from its own rules. The United States Supreme Court rejected the argument that procedural due process grants this right in Dixon , and I would reject it here as well.
¶ 56 Similarly, in Connecticut Department of Public Safety v. Doe , 538 U.S. 1, 6, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003), an individual admitted that he had a conviction that would require him to be listed on the sex offender registry as a sexually dangerous person. He claimed that due process gave him a right to a hearing to establish that despite his conviction, he was not dangerous. Id. The Court unanimously rejected his due process claim because the law at issue did not allow for individualized considerations of dangerousness. Id. at 7-8, 123 S.Ct. 1160. The Court held that "[p]laintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." Id. at 8, 123 S.Ct. 1160. Fields also admitted that she had a disqualifying conviction but claims that due process gives her the right to a hearing to establish that despite her conviction, she is not dangerous to children. Whether or not she is dangerous to children is not relevant under the current DEL rules, which expressly preclude any consideration of individual circumstances where a person is permanently disqualified due to a prior conviction for robbery. Former WAC 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(1), - 0115(5), - 0120(1) (2015). Therefore, applying Doe , Fields is not entitled to an individualized hearing because she cannot show that the facts she seeks to establish in that hearing are relevant under the statutory scheme.
¶ 57 The lead opinion claims that procedural due process requires DEL to allow Fields to make the argument that the rule violates her substantive due process rights during the administrative process. Lead opinion at 1006. But Fields did have the opportunity to obtain review of her claim that the rule was unconstitutional as applied to her by filing in the superior court. The fact that she could not make this challenge, or any other constitutional challenge, during the administrative process does not violate her rights to procedural due process. Procedural due process does not require that administrative hearings consider all possible claims, such as whether *1013a rule violates substantive due process as applied in a particular case. See Amunrud , 158 Wash.2d at 218, 143 P.3d 571 (explaining that the appellant was not denied meaningful review of his license suspension despite the fact that the State did not consider his unusual circumstances because he could file an appeal of the child support order that indirectly led to the suspension with the court that issued it). This is a well-established principle of law:
Although a state law might give an individual a right to some type of fair process or hearing, simply to complain about the effect of a law on the individual, the due process clause of the Fourteenth Amendment does not give an individual a right to a hearing if the person admits that the law applies to him. In other words, once an individual admits that a law applies to him, he has no basis for a procedural due process claim because any fair procedure would, by his own admission, result in a finding that the law applies to him. The individual in such circumstances may make a substantive claim against the law by challenging the rule of law created by the statute or regulation.
ROTUNDA & NOWAK , supra , at 732 ; see also Reno v. Flores , 507 U.S. 292, 308, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (holding that a claim that a procedural system is unconstitutional because it does not allow individualized determination "is just the 'substantive due process' argument recast in 'procedural due process' terms").
¶ 58 Because Fields had the opportunity to make her substantive due process claim in superior court, she was not denied procedural due process.
3. The State has a strong public interest in protecting children and the burden on the State to conduct individualized hearings would be great
¶ 59 The lead opinion admits and the parties do not dispute that the State has a strong interest in protecting children who are taught or cared for in licensed facilities and that the State has an interest in avoiding undue administrative burdens. The lead opinion fails to acknowledge the extent of the increase in the administrative burden on DEL based on its ruling today.
¶ 60 The burden of this decision on the government will be great. The lead opinion claims that because this is an as applied challenge, the result will be only that Fields is entitled to an individualized hearing. Lead opinion at 1007. However, DEL claims in oral argument that it receives 21,000 applications each year. Wash. Supreme Court oral argument, Fields v. Dep't of Early Learning , No. 95024-5 (May 8, 2018), at 22 min., 06 sec., video recording by TVW, Washington State's Public Affairs Network, http://www.tvw.org. It is inevitable with that number of applicants that others will also argue that they are rehabilitated despite their convictions for disqualifying crimes. As a consequence of the lead opinion's holding, DEL will have to make a choice each time a person claims to be rehabilitated. It can provide individualized hearings to everyone who makes this claim, including people with disqualifying convictions for child molestation and child rape, as Fields advocated for at oral argument. See id. at 8 min., 19 sec, 15 min., 27 sec. Or, it can deny individualized hearings to other applicants, in which case this court may decide that this denial violated procedural due process rights. By holding that Fields was denied procedural due process in this case, the lead opinion will require the agency to consider the argument that its own rule is unconstitutional as applied. DEL's regulations do not allow parties to make constitutional claims in the administrative process for good reason: questions of constitutionality are best left to the courts.
¶ 61 By expanding the bounds of procedural due process in this way, the lead opinion invites a flood of litigation. Some applicants who are undisputedly disqualified under the rules will file suit, and a superior court will have to determine whether or not the applicant is in the same situation as Fields, or a sufficiently similar situation, to demand the same relief. The court will have to decide whether this person's circumstances are so unique that a failure to consider them would create a great risk of erroneous deprivation of the ability to work in childcare, without ever holding that DEL's disqualification rule *1014violates substantive due process. Even if these decisions could be easily made, having to hear these new challenges would impose a large burden on DEL and the court system. We are required to consider this burden under the third prong of the Mathews test. DEL currently provides a clear list of disqualifying offenses and provides certainty and a quick system of resolution for many cases. The director's list may be both under- and overinclusive in certain instances, but it provides the clear advantage of avoiding the time and expense of individualized hearings in each of these cases. This is why "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions." Mathews , 424 U.S. at 344, 96 S.Ct. 893.
¶ 62 I would find that Fields' procedural due process claim fails because as the lead opinion admits, there is no risk of erroneously applying the law at issue here, and the burden on the State of granting individualized hearings would be great.
¶ 63 The lead opinion believes that there is high risk that this rule violates substantive due process as applied to Fields. See lead opinion at 1004-06. I disagree. I now turn to a consideration of Fields' substantive due process claim.
C. Fields' substantive due process claim cannot overcome the heavy presumption of constitutionality inherent in rational basis review
¶ 64 When assessing a substantive due process claim in the context of the right to pursue a trade or profession, we apply a rational basis standard of review. See Amunrud , 158 Wash.2d at 222, 143 P.3d 571. "Under this test, the challenged law must be rationally related to a legitimate state interest." Id. "The rational basis test is the most relaxed form of judicial scrutiny." Id. at 223, 143 P.3d 571. When applying the rational basis test, "we do not require that the government's action actually advance its stated purposes, but merely look to see whether the government could have had a legitimate reason for acting as it did." Wedges/Ledges of Cal., Inc. v. City of Phoenix , 24 F.3d 56, 66 (9th Cir. 1994). "If it is 'at least fairly debatable' that the [government]'s conduct is rationally related to a legitimate governmental interest, there has been no violation of substantive due process." Halverson v. Skagit County , 42 F.3d 1257, 1262 (9th Cir. 1994) (quoting Kawaoka v. City of Arroyo Grande , 17 F.3d 1227, 1234 (9th Cir. 1994) ).
¶ 65 The question in this case is whether there could be a rational basis for permanently disqualifying Fields based on her second degree robbery conviction without giving her an individualized hearing.
¶ 66 The legislature created DEL to "safeguard and promote the health, safety, and well-being of children receiving childcare and early learning assistance, which is paramount over the right of any person to provide care." Former RCW 43.215.005(4)(c) (2010). The parties do not dispute that this is a legitimate state interest.5 The lead opinion also concedes that the State has a legitimate interest in avoiding the administrative burden of holding an individualized inquiry in every case. Lead opinion at 1007.
¶ 67 The case then hinges on whether Fields can show that the decision to permanently disqualify her based solely on her conviction for attempted robbery, without an individualized hearing, is not rationally related to these legitimate state interests. Fields cannot show that it is not " 'at least fairly debatable' " that this decision was rational. See Halverson , 42 F.3d at 1262 (quoting Kawaoka , 17 F.3d at 1234 ).
¶ 68 The lead opinion makes several claims about this conviction that go beyond the evidence before us. First, the lead opinion claims that there is no indication that any children were either victims of or witnesses to the attempted robbery. But there is also no indication that children were not around *1015when the attempted robbery took place. There simply is not evidence pointing in either direction on this issue, and this factor should not guide our decision. The lead opinion also states that "because Fields was not convicted of first degree robbery, we know that she was not armed with a deadly weapon, did not display anything that appeared to be a deadly weapon, and did not cause any bodily injury to the victim." Lead opinion at 1005. But this record does not show what Fields did not do. It goes too far to assume that just because Fields was convicted of only second degree robbery, her behavior could not have encompassed elements of more serious crimes.
¶ 69 Even if the lead opinion is correct as to the facts of this particular case, the legislature and this court have acknowledged that second degree "robbery is a most serious offense," State v. Witherspoon , 180 Wash.2d 875, 888, 329 P.3d 888 (2014) ; RCW 9.94A.030(33)(o). It is also on the list of crimes the legislature has designated as a crime against children or persons in RCW 43.43.830(7). An examination of the statute makes clear why. A conviction for robbery requires a finding that the defendant "use[d] or threatened use of immediate force, violence, or fear of injury" to his or her victim. RCW 9A.56.190. This court has held that " '[t]he nature of the crime of robbery includes the threat of violence against another person.' " Witherspoon , 180 Wash.2d at 888, 329 P.3d 888 (quoting State v. Rivers , 129 Wash.2d 697, 713, 921 P.2d 495 (1996) (addressing the claim that the punishment for second degree robbery was cruel and unusual)).
¶ 70 It is not a guarantee that a robbery conviction means a person will pose a danger to children. It may be true that Fields in fact does not pose a danger to children today. But under the rational basis test, we need find only that DEL could have had a rational reason for acting as it did. In general, the disqualification regulations are a reasonable means to advance the State's legitimate interest. The lead opinion argues, however, that Fields' circumstances are so unique that there is a risk that it is irrational to apply this general rule to her. But Fields' circumstances are no different from many other second degree robbery cases. Most second degree robbery cases do not involve children, do not involve a deadly weapon, and do not cause bodily injury to the victim. Nevertheless, in order to be convicted, a court had to be satisfied that Fields herself "use[d] or threatened use of immediate force, violence, or fear of injury" to her victim. RCW 9A.56.190. It is not irrational for DEL to conclude that because Fields has committed this kind of violent crime, she has demonstrated an impulsivity and a willingness to hurt another human such that she should be categorically barred from work in childcare facilities. Therefore, Fields has failed to meet her heavy burden under the rational basis test to show that DEL's decision to permanently disqualify her based on her robbery conviction is not even rationally related to the State's strong interest in protecting children and avoiding the administrative expense of holding an individualized hearing. I would hold that Fields has failed to show that this DEL rule is an unconstitutional violation of her substantive due process rights.
¶ 71 Because Fields had a meaningful opportunity to be heard in order to challenge the fact of her conviction, I would find that rights to procedural due process were satisfied. Because Fields is unable to show that her permanent disqualification based on her past conviction for robbery is not rationally related to the legitimate state interest in protecting children, her substantive due process claim must likewise fail. I respectfully dissent.
Owens, J.
Wiggins, J.
Johnson, J.

The Department of Early Learning is now part of the Department of Children, Youth, and Families, but I will refer to it as DEL in this concurrence.

See John E. Nowak & Ronald D. Rotunda, Constitutional Law § 11.4, at 370, § 14.4, at 601 (4th ed. 1991), Washington v. Glucksberg , 521 U.S. 702, 728, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) ; Seeley v. State , 132 Wash.2d 776, 795, 940 P.2d 604 (1997) ; In re Pers. Restraint of Metcalf , 92 Wash. App. 165, 963 P.2d 911 (1998).

In response to the dissent's criticism of the lead opinion's logic on this point, dissent at 1014-16, I note that it is only the necessarily adjudicated facts of the crime that we can consider at this point, see Blakely v. Washington , 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and those necessarily adjudicated facts do not involve children, deadly weapons, or bodily injury.

There was a discussion in oral argument and briefing about the possibility that Fields would be able to become qualified via the certificate of restoration of opportunity act (CROP), RCW 9.97.010 and .020. I agree with the lead opinion that this is pure speculation at this stage and is therefore not relevant to the decision we reach today. Fields does not currently have a CROP, and whether or not Fields would qualify for a CROP is an open question. CROP does not answer the question before us today because Fields is claiming that DEL violated her due process rights by failing to provide her with an individualized hearing based solely on her claim of rehabilitation. Whether or not the new Department of Children, Youth, and Families would provide her with an individualized hearing if she obtained a CROP does not resolve this question.

At times Fields' argument appears to suggest the rule is not related to DEL's mission in protecting children. See Hi-Starr, Inc. v. Liquor Control Bd. , 106 Wash.2d 455, 459, 722 P.2d 808 (1986) ("An agency's rules must be encompassed within its statutory framework."). Whether DEL's adoption of the rule exceeded its delegated authority was not briefed by the parties and is not before the court.