# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JASON GERARD, | No. 53516-5-II |
| Appellant, | |
| v. | |
| PIERCE COUNTY, | UNPUBLISHED OPINION |
| Respondent. | |

MELNICK, J. — Jason Gerard appeals the superior court's order denying his Land Use Petition Act (LUPA)[1] of the Pierce County Hearing Examiner's decision affirming a notice of violation and abatement (NOVA) issued by the County. Gerard argues that the hearing examiner improperly admitted the County's staff report and that the investigation of his property violated his constitutional right to privacy. We affirm.

## FACTS

### I.  THE PROPERTY & INVESTIGATION

Jason Gerard owned real property, zoned Rural 10 (R-10), located in Roy, Washington. In Pierce County, R-10 is intended to provide for rural uses of a property at a rural density. Pierce County Code (PCC) § 18A.10.090(B). Gerard also owned Penetration Dirtworks LLC, which possessed a labor and industries license. The license was suspended on January 22, 2017, a year before it was due to expire.

---

[1] Chapter 36.70C RCW

In early 2017, Pierce County Code Enforcement received a complaint about illegal activities on Gerard's property. On March 9, a Code Enforcement officer received consent from the complaining neighbor to enter his property and view Gerard's property. The property contained stored commercial vehicles, construction equipment, construction materials, steel supports, and large plastic pipes, as well as approximately 200 cubic yards of improperly stored solid waste. There also appeared to be some construction being done to the primary home.

On March 17, Gerard admitted to a Code Enforcement official that he was running a contractor yard on the property. He further stated that "he moved out there so that he can do what [he] wants on his property and that he has no neighbors." Clerk's Papers (CP) at 11.

On April 21, a Code Enforcement official received consent to view Gerard's property from neighboring property. The official confirmed that a large area of recently excavated soil, excavating equipment, semi-trailers, large trucks, and improperly stored solid waste[2] existed.

On June 6, Pierce County Code Enforcement sent Gerard a first NOVA, informing him that a violation appeared to exist and that it needed to be corrected.

On November 17, a Code Enforcement official again viewed Gerard's property from the complaining neighbor's property and confirmed the presence of several heavy equipment vehicles, construction materials, and improperly stored solid waste. A large dirt berm,[3] with a large recreational vehicle (RV) placed on top, had also been constructed. It significantly obstructed the view from the complaining neighbor's property, but Code Enforcement officials viewed the property from a different area of the neighboring property and confirmed the violations.

---

[2] The solid waste included vehicles, tires, scrap wood, and demolition waste.

[3] A witness described the berm as "a wall 15 to 20 feet high . . . constructed of slash and construction debris, stumps, limbs." CP at 60.

Code Enforcement officials had permission to enter the adjacent properties, and did not enter the Gerard's property itself. [4]

On December 13, the County sent Gerard a final notice and order to correct and a NOVA. The County alleged Gerard was operating a contractor yard in a R-10 zone without a conditional use permit (CUP), was storing industrial equipment and vehicles not allowed in a R-10 zone, and was improperly storing and accumulating solid waste.

Contractor yards are generally not allowed in a R-10 zone, and a person seeking to create the yard therein must obtain a CUP. PCC § 18A.17.020. Contractor yards are defined as "an area for construction or contracting business offices, interior or outdoor storage, repair, or maintenance of heavy equipment, vehicles, or construction supplies and materials." PCC § 18A.33.280. A CUP is "a written decision . . . authorizing a conditional use to locate at a specific location." PCC § 18.25.030.

Vehicle storage not associated with a single-family residence is also not permitted in R-10 zones. See PCC §§ 18A.10.090 and 18A.17.020. Only a single vehicle weighing up to 30,000 pounds may be parked on any one property located in zone R-10. PCC § 18A.37.080. Improperly stored solid waste is a per se violation of the PCC. PCC § 8.08.050(F). The definition of solid waste includes, among other items, machinery or appliances, construction debris, tires, rotting or scrap lumber, junk vehicles, scrap metal, and vehicle parts. PCC § 8.08. 030.

---

[4] Pierce County Code Enforcement received a signed letter from a second neighboring property owner, Richard Daskam, allowing Code Enforcement access to his property, so long as they were accompanied by the complaining neighbor. At the end of the hearing, a witness requested to speak in support of Pierce County. In the course of his testimony, that witness mentioned that Daskam had passed away, and the letter was signed by his son. There was no objection to or ruling made regarding his testimony.

II.      THE ADMINISTRATIVE HEARING & SUBSEQUENT REVIEW

Gerard appealed the final notice and order to correct and the NOVA to the Pierce County Hearing Examiner. The examiner denied Gerard's appeal. During the hearing, the examiner admitted a staff report which is discussed in more detail below. Gerard then filed a LUPA petition in the Thurston County Superior Court. After oral argument, the court issued an order affirming the examiner's decision. Gerard appeals.

ANALYSIS

I.      STANDARD OF REVIEW

Judicial review of land use decisions is governed by LUPA. RCW 36.70C.020(2); *Griffin v. Thurston County*, 165 Wn.2d 50, 54, 196 P.3d 141 (2008). An appellate court stands in the same position as the superior court and applies the standards set forth in RCW 36.70C.130(1) to the administrative record. *Griffin*, 165 Wn.2d at 54–55; *Dept. of Transp. v. City of Seattle*, 192 Wn. App. 824, 836, 368 P.3d 251 (2016).

Under LUPA, the party seeking relief from an administrative decision bears the burden of proving any error. RCW 36.70C.130(1). In addition to that burden, we may only rule in favor of the party seeking relief if he successfully proves one of the following:

    (a)     The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

    (b)     The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of law by a local jurisdiction with expertise;

    (c)     The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

    (d)     The land use decision is a clearly erroneous application of the law to the facts;

(e)     The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f)     The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1).  Gerard alleges violations under RCW 36.70C,130(1)(a), (b), (c), (d), and (f).[5]

Review under RCW 36.70C.130(1)(a), (b), and (f) presents questions of law that we review de novo.  *Whatcom County Fire Dist. No. 21 v. Whatcom County*, 171 Wn.2d 421, 426, 256 P.3d 295 (2011); *HJS Dev., Inc. v. Pierce County*, 148 Wn.2d 451, 468, 61 P.3d 1141 (2003).

Under RCW 36.70C.130(1)(c), we review the facts and inferences in the light most favorable to the party that prevailed in the highest factfinding forum, and ask whether there is sufficient evidence in the record to persuade a reasonable person of the truth of the matter asserted. *Phoenix Dev., Inc. v. City of Woodinville*, 171 Wn.2d 820, 828-29, 256 P.3d 1150 (2011).  Under RCW 36.70C.130(1)(d), an application of the law to the facts is clearly erroneous if, after reviewing all of the evidence, we are left with "the definite and firm conviction that a mistake has been committed." *Phoenix*, 171 Wn.2d at 829.

We have the authority to affirm or reverse the land use decision, or remand it for modification or further proceedings.  RCW 36.70C.140.

---

[5] Gerard further alleges that, under the Pierce County Hearing Examiner Code, the County had the initial burden of establishing that the violations cited in the NOVA occurred, and that it failed to do so.  However, LUPA is the exclusive means of obtaining review of land use decisions, with certain exceptions not applicable here.  RCW 36.70C.030.  LUPA only allows us to grant relief if Gerard proves one of the violations set forth in RCW 36.70C.130(1).

II.     THE STAFF REPORT

Gerard argues that the staff report was improperly admitted over objection, and without argument, claims its improper admission satisfies RCW 36.70C.130(1)(a), (b), (d), and (e). Because the examiner properly included the staff report in the record, we disagree.

Both the PCC and the Pierce County Hearing Examiner Rules of Procedure (HEX Rules) support the County's argument that the staff report is the basis of the hearing and is automatically admitted, unless an objection is sustained. The PCC mandates that "[s]taff reports shall be filed with the Examiner, mailed to the applicant and appellant and made available to the public at least 10 working days prior to the public hearing scheduled. Copies shall be provided to the public upon request at the cost of reproduction." PCC § 1.22.090(B)(1)(c).[6]

Under the HEX Rules, "[t]he staff report and all documents offered from the official County file will be admitted, unless an objection thereto is sustained." HEX Rule 1.08(E)(2). The hearing examiner is also required to maintain "[t]he staff report and all written submissions" in the official file. HEX Rule 1.06. "The record of a quasi-judicial hearing conducted by the Examiner shall include at least the following: . . . The staff report and all accompanying documents." HEX Rule 1.16.

At the administrative hearing, Gerard objected to the staff report on the basis that, "there's been no request for admission or support for admitting [all the documents contained in the staff report]. So we would move to strike those." CP at 64. The examiner responded that the staff report was "already a part of the record," and did not sustain Gerard's objection. CP at 64-65.

---

[6] The PCC has been amended since the time period at issue in this matter. Because the amendments do not affect the analysis in this prehearing, the prehearing cites to the current version of the code.

Because there was no sustained objection, and because the hearing examiner was required to maintain the staff report as part of the record, the examiner did not improperly admit the staff report.

A.    RCW 36.70C.130(1)(a)—*Unlawful Procedure or Failure to Follow a Prescribed Process*

First, Gerard argues that the hearing examiner violated the Pierce County rules by not specifically accepting the staff report into evidence, and instead ruling that it was automatically part of the record. Gerard asserts that this action satisfies RCW 36.70C.130(1)(a), and that the error was not harmless. As set forth above, the standard of review under RCW 36.70C.130(1)(a) is de novo. *HJS Dev.*, 148 Wn.2d at 468.

Because the PCC and Hex Rules support the hearing examiner's ruling, we disagree. The examiner followed the prescribed process.

B.    RCW 36.70C.130(1)(b)—*Misinterpretation of the Law*

Second, Gerard argues that the hearing examiner's decision to admit the staff report was an erroneous interpretation of the law and satisfies RCW 36.70C.130(1)(b). The standard of review under RCW 36.70C.130(1)(b) is also de novo. *HJS Dev.*, 148 Wn.2d at 468. Again, as previously set forth, because the PCC and Hex Rules support the hearing examiner's ruling, the hearing examiner did not misinterpret the law.

C.    RCW 36.70C.130(1)(d)—*Clearly Erroneous Application of the Law to the Facts*

Third, Gerard argues that the admission of the staff report was a clearly erroneous application of law to the facts, and satisfies RCW 36.70C.130(1)(d). As we have previously mentioned under RCW 36.70C.130(1)(d), an application of the law to the facts is clearly erroneous if, after reviewing all of the evidence, we are left with "the definite and firm conviction that a mistake has been committed." *Phoenix Dev.*, 171 Wn.2d at 829.

Because the PCC and Hex Rules support the hearing examiner's ruling, we conclude that the application of law to the facts was not clearly erroneous.

D. RCW 36.70C.130(1)(f)    *Violation of Constitutional Rights*

Gerard also argues that, if the staff report is automatically admitted, it violates due process. No due process violation occurred because Gerard had a meaningful opportunity to present evidence and be heard.[7]

As set forth above, Pierce County Code mandates that the staff report be provided to the opposing party prior to the hearing. PCC § 1.22.090(B)(1)(c). At the hearing, the opposing party may present opposing evidence, challenge any perceived errors, and question witnesses regarding the staff report. These are exactly the type of procedural safeguards meant to satisfy due process. *See City of Bellevue v. Lee*, 166 Wn.2d 581, 586-89, 210 P.3d 1011 (2009).

We conclude that the admission of the staff report did not violate Gerard's constitutional right to due process.

III.    RIGHT TO PRIVACY

Gerard also argues that the hearing examiner's decision violates his constitutional right to privacy, and therefore satisfies RCW 36.70C.130(1)(f). Specifically, Gerard argues that the evidence supporting the NOVA was unconstitutionally obtained, because "[a]ny search of the property owners' property was undertaken without a warrant . . . [a]s such, all searches violate both the Washington and U.S. Constitution." Appellant's Br. at 40.

---

[7] Gerard also dedicates significant argument to his contention that the County's alleged failure to prove each element of the claimed violation is a due process violation. In support of applying this standard, Gerard cites Washington's criminal code and criminal cases. In particular, Gerard relies on RCW 9A.04.100(1), which states "[n]o person may be convicted of a crime unless each element of such crime is proved by competent evidence beyond a reasonable doubt." Gerard presents no authority for applying that criminal standard in a LUPA case.

8

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. CONST. amend. IV. A search occurs when "(1) there is a subjective manifestation of privacy in the object searched and (2) society recognizes that privacy interest as reasonable." *Dodge City Saloon, Inc. v. Liquor Control Bd*., 168 Wn. App. 388, 397, 288 P.3d 343 (2012). If there is not a recognized privacy interest, there is not an unconstitutional search. *Dodge City Saloon*, 168 Wn. App. at 397.

Washington's constitution places "greater emphasis on privacy" than the federal constitution. *State v. Ladson*, 138 Wn.2d 343, 348, 979 P.2d 833 (1999). In Washington, a person may not be "disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art I, § 7. It is unquestioned that the privacy protections of both the United States and Washington Constitutions extend to all government agents. *State v. Vonhof*, 51 Wn. App. 33, 37, 751 P.2d 1221 (1988).

Under the open view doctrine, "'when a law enforcement officer is able to detect something by utilization of one or more of his senses while lawfully present at the vantage point where those senses are used, that detection does not constitute a search'." *State v. Rose*, 128 Wn.2d 388, 392, 909 P.2d 280 (1996) (internal quotation marks omitted) (*State v. Young*, 123 Wn.2d 173, 182, 867 P.2d 593 (1994)).

All of the cases Gerard relies on involve an actual entry on and search of property. Here, the evidence shows that the County never entered Gerard's property, and certainly did not search the property or any buildings on the property. The County viewed Gerard's property from a lawful vantage point. Accordingly, Gerard's argument fails.

IV.    SUBSTANTIAL EVIDENCE

Finally, Gerard argues that the land use decision was not supported by substantial evidence, and therefore satisfies RCW 36.70C.130(1)(c). He contends that the staff report should have been excluded from evidence and that observations of his property from neighboring parcels were unconstitutional. We disagree with Gerard.

Under RCW 36.70C.130(1)(c), we determine whether substantial evidence supports the land use decision "when viewed in light of the whole record before the court." We review the facts and inferences in the light most favorable to the party that prevailed in the highest factfinding forum, and ask whether there is sufficient evidence in the record to persuade a reasonable person of the truth of the matter asserted. *Phoenix Dev.*, 171 Wn.2d at 828.

Because we reject Gerard's arguments which are based solely on the contention that the staff report and any observation of Gerard's property should be excluded from the record, which we reject, we also reject his argument that substantial evidence does not support the land use decision.

## ATTORNEY FEES

The County argues that it is entitled to costs and attorney fees under RCW 4.84.370. RCW 4.84.370 mandates an award of costs and attorney fees to the prevailing party involved in a land use decision if the party also prevailed in all prior proceedings. Here, the County prevailed before the hearing examiner, the superior court, and this court. Therefore, the County is the prevailing party as defined in RCW 4.84.370(2), and it is entitled to reasonable attorney fees and costs.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, P.J.

Cruser, J.