IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the marriage of: | No. 83283-2-I |
| PAUL RYAN ADGAR, | DIVISION ONE |
| Appellant, | UNPUBLISHED OPINION |
| and | |
| PAMLA JO ADGAR, | |
| Respondent. | |

ANDRUS, A.C.J. — Paul Adgar challenges the trial court's decision to enter a five-year restraining order protecting Paul's former spouse, Pamla.[1] Paul also contends that the trial court erred by denying his motion to reconsider the restraining order and the decision not to continue the parties' dissolution trial. Paul fails to establish that the trial court abused its discretion by imposing the restraining order or denying his motion for reconsideration. Therefore, we affirm.

FACTS

Paul and Pamla were married in 2013; they separated in 2017. They own no real property and share no children.

In October 2018, Paul petitioned for dissolution. He alleged that the parties

---

[1] Because the parties share a last name, we refer to them by their first names for clarity.

had already divided their personal property and asked the court to "order that each spouse will keep any personal property that s/he now has or controls" and be responsible for the debts in his or her name. He asked specifically that the court allocate a Lexus vehicle and all associated debt to Pamla.

Pamla opposed Paul's request, stating, "[Paul] is requesting I keep my Lexus and walk away from the marriage. I am not agreeing to this." Pamla alleged that Paul had stolen a number of items from her and had used marital property to acquire personal property, including a number of vehicles. She requested, among other things, an award of "½ equity" in those vehicles.

In her response, Pamla checked the box for "No" in response to the question, "Do you want the court to issue an Order for Protection as part of the final orders in this case?" However, she asserted that "Paul . . . has been harassing me and I have a restraining order in place," and she attached to her response a written statement detailing Paul's alleged physical and mental abuse. She alleged that Paul tried to choke her "too many times to keep track of," threw her down the stairs on one occasion, and, on another occasion, grabbed her by the face and broke her nose. She also alleged that Paul threw a rock at her through the back window of his truck, and that he "ripped the key from my Lexus . . . while it was running and put the transmission in reverse while we were going 50 miles an hour to wreck my only car." She attested that she left him after that incident. She also described additional incidents where Paul allegedly tried to harm her after the two separated.

A dissolution trial took place the afternoon of February 25, 2020. At the outset, the trial court asked the parties whether they were ready to proceed, and Paul

responded no. When the court asked why, Paul responded that his witnesses either refused to show up or were present earlier but had to leave. In the colloquy that followed, the trial court indicated that (1) it would not grant a continuance; (2) the only issues before it, based on Paul's petition and Pamla's response, were how to divide the assets and liabilities and whether "to continue Restraining Orders," and (3) it would entertain an offer of proof "on the evidence that you think you might have."

The court proceeded to take testimony, starting with Paul, regarding the parties' assets and debts. At the end of Paul's testimony, the court asked Paul about the witnesses he would have called, and Paul indicated that he would have called three: his mother, his brother, and his brother-in-law.

When Pamla testified, she described an incident in which Paul was "really upset with [her] one day and he came in and he hit [her]" and "grabbed [her] from behind" and broke her nose. Pamla attested that Paul choked her "probably 30 to 40 times during [the] marriage." She also described an incident in which Paul gave her permission to retrieve some of her furniture while he was at work. Pamla testified that as she was leaving, Paul "was coming 50 miles an hour . . . in oncoming traffic and he hit a teenager head-on and totaled that vehicle." She testified that Paul then "got out of that vehicle and came up to [her] car . . . and he said, 'I was going to kill you, was trying to kill you.'" Pamla testified that on another occasion, Paul "hid outside of the house [she was] in now with [her] boyfriend and tried to kill [her]." She claimed that Paul "pled guilty to" that incident but was unable to present evidence of Paul's plea.

In rebuttal, Paul testified that he did not plead guilty to any allegations of

domestic violence, but did plead guilty to "Violating a Protection Order and Malicious Mischief." He also testified that the judge "g[a]ve [him] a two-year Restraining Order rather than the standard one year on that." At the time of trial, approximately 11 months remained on the term of that restraining order (criminal restraining order).

At the close of the testimony, the trial court made an oral ruling. After dividing the parties' assets and liabilities, the court found:

> The evidence here is persuasive to this Court that there was violence on that day and you did perpetrate violence. It's on a more likely than not here basis. It's not a criminal case. I'm not held to the obligation of finding you guilty beyond a reasonable doubt. That's not the question here, at all. It's just a question of whether or not -- before the Court, who's more believable. And, frankly, I find [Pamla] far more credible than you on that issue.

The trial court entered findings and conclusions and a dissolution decree in open court. The court concluded that a restraining order should be entered "[t]o be effective for 5 y[ea]rs from date of entry of final decree."

A presentation hearing for the restraining order took place on March 5, 2020. Pamla did not have an order to present; she brought only a copy of the criminal restraining order. The court directed Pamla to "go downstairs and get a copy of [the] proper order," and it explained, "[T]his is a 26.09.050 order." After a recess, Pamla returned with a proposed order on a pre-printed form. The court invited comments from Paul's counsel,[2] who stated, "So my first concern is that . . . the date should be February 25th, 2025, as the expiration date because that was the day trial was concluded." The court responded, "I'll make it five years from today's date, March

---

[2] Paul appeared pro se for trial, but he retained counsel for the presentation hearing.

No. 83283-2-I/5

5th, 2025," and it later signed the order.

The next day, Paul moved for reconsideration of the trial court's decision not to continue the trial and its decision to issue a restraining order. The trial court denied reconsideration, observing that it had granted three of Paul's continuance requests and, a few weeks before trial, had denied a fourth request "so that a dissolution of marriage case that had been pending for more than sixteen months would finally go to trial[, t]hereby allowing the parties to move on with their lives." The trial court also explained, "The credible evidence presented at trial established that [Paul] poses an ongoing threat to the safety and wellbeing of [Pamla] that is likely to continue for the foreseeable future." Paul appeals.

ANALYSIS

Restraining Order

Paul argues the trial court erred by entering the restraining order. We disagree.

Courts in dissolution proceedings have broad statutory and equitable authority to impose and fashion restraining orders. RCW 26.09.050(1); Blackmon v. Blackmon, 155 Wn. App. 715, 721-22, 230 P.3d 233 (2010) (protection and restraining orders are essentially a type of injunction and are equitable in nature); 20 SCOTT J. HORENSTEIN, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 41:3, at 634-35 (2d ed. 2015) (dissolution courts have "broad equitable powers to fashion remedies," including restraining orders, over and above the available statutory remedies, and "[r]estraining orders may include, but are not limited to," provisions based on statutes governing surrender of weapons, domestic violence

- 5 -

protection orders, and antiharassment protection orders).

We review a trial court's decision to impose a restraining order for abuse of discretion. In re Marriage of Freeman, 169 Wn.2d 664, 671, 239 P.3d 557 (2010). " 'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.' " In re Marriage of Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005) (quoting In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)).

Here, the trial court had a tenable basis for imposing a five-year restraining order protecting Pamla from Paul. Pamla testified as to Paul's abusing her, including by choking her on multiple occasions, breaking her nose, and threatening to kill her twice after the couple separated. And Paul himself testified, with regard to one of these incidents, that he violated an existing order directing him not to have contact with Pamla. We discern no abuse of discretion in the trial court's decision to enter a five-year restraining order.

Paul contends that because Pamla did not request a restraining order in her response to Paul's petition, the trial court was without authority to impose one. But Paul did not object on this basis until his motion for reconsideration. Cf. Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005) (appellate court may decline to consider new theories of law raised for the first time in a motion for reconsideration). In any event, Paul cites no authority for, and we are not persuaded by, his assertion that a court cannot impose a restraining order when the evidence supports one but no specific request was made. Cf. Hough v. Stockbridge, 150 Wn.2d 234, 236, 76 P.3d 216 (2003) (holding that power to issue a protection order

is both statutory and equitable, that a court sitting in equity can fashion broad remedies to do substantial justice, and that a district court can therefore issue a protection order sua sponte). To the contrary, the relevant statute mandates that, "[i]n entering a decree of dissolution of marriage . . . , the court <u>shall</u> . . . make provision for any necessary continuing restraining orders." RCW 26.09.050(1) (emphasis added).

Paul next points out that RCW 26.09.050(1) directs the court to make provision only for "any <u>necessary</u> continuing restraining orders." (Emphasis added.) He asserts that necessary means "logically or absolutely required." He then challenges the sufficiency of the evidence to support a finding of necessity, noting, for example, that Pamla did not request a restraining order and there was no allegation that Paul had violated the criminal restraining order that was already in place. But appellate courts do not weigh and evaluate conflicting evidence; rather, we "consider only whether the evidence most favorable to the prevailing party supports the challenged findings, even if the evidence is in conflict." <u>Prostov v. Dep't of Licensing</u>, 186 Wn. App. 795, 820, 349 P.3d 874 (2015). Consequently, even accepting Paul's definition of "necessary" as "logically or absolutely required," there was, for reasons already discussed, sufficient evidence to support a finding that a five-year restraining order was logically required based on Pamla's testimony at trial. While Paul asserts that Pamla "testified about alleged abuse without entering one piece of evidence to support her claim," Pamla's testimony was, itself, evidence. And, while Paul asserts that the trial court denied him the opportunity to rebut Pamla's "false statements," the record reflects that the trial court did give Paul the opportunity

to rebut Pamla's testimony with relevant evidence.

Paul next argues that because the criminal restraining order was already in place, "the criminal court and not the dissolution court should have authority over the type and duration of any restraints entered." But as discussed, a dissolution court has independent statutory and equitable authority to enter restraining orders. Paul cites no authority for the proposition that because a criminal court had already entered a protection order, the dissolution court was deprived of its authority to enter a separate order just because that order effectively extended the duration of Pamla's protection. Thus, we reject that proposition. See RAP 10.3(a)(6) (requiring arguments to be supported by legal authority); DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

Finally, Paul contends that even if the trial court had authority to enter the restraining order, it erred by making the term of the order five years and beginning the term on March 5, 2020 (the date the order was entered) rather than February 25, 2020 (the date of the final decree). He points out that the "default language" on the pre-printed form "is for the order to end in 12 months" and argues the trial court erred inasmuch as it did not enter findings to support a longer term. But the law drives the forms, not vice versa, In re Marriage of Allen, 78 Wn. App. 672, 679, 898 P.2d 1390 (1995), and Paul cites no law requiring additional findings for a five-year, as opposed to a one-year, restraining order.

In any case, the trial court specifically found, in denying Paul's motion for

reconsideration, that Paul "poses an ongoing threat to the safety and wellbeing of [Pamla] that is likely to continue for the foreseeable future." This finding is supported by the record, and thus, Paul does not persuade us that the trial court erred by entering a five-year order. Cf. Freeman, 169 Wn.2d at 675 (even a permanent protection order is within the court's discretion if the present likelihood of a recurrence is reasonable). For the same reasons, Paul also fails to persuade us that it was manifestly unreasonable for the trial court to begin the five-year term on the date the restraining order was entered despite its earlier statement that the term would begin on the date of the final decree.

Motion for Reconsideration

Paul argues the trial court erred in denying his motion to reconsider the restraining order and the decision not to continue trial. We disagree.

A trial court may grant reconsideration or a new trial for the reasons set out in CR 59.[3] "Motions for reconsideration are addressed to the sound discretion of the

---

[3] CR 59 provides that a motion for reconsideration may be granted for the following reasons:

(1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial;
(2) Misconduct of prevailing party or jury; and whenever any one or more of the jurors shall have been induced to assent to any general or special verdict or to a finding on any question or questions submitted to the jury by the court, other and different from the juror's own conclusions, and arrived at by a resort to the determination of chance or lot, such misconduct may be proved by the affidavits of one or more of the jurors;
(3) Accident or surprise which ordinary prudence could not have guarded against;
(4) Newly discovered evidence, material for the party making the application, which the party could not with reasonable diligence have discovered and produced at the trial;
(5) Damages so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice;
(6) Error in the assessment of the amount of recovery whether too large or too

trial court and a reviewing court will not reverse a trial court's ruling absent a showing of manifest abuse of discretion." Wilcox, 130 Wn. App. at 241.

Paul asserts the restraining order violates "his rights under the due process clauses of the state and federal constitutions given that his request for a trial continuance was denied and the matter was rushed to conclusion after less than three hours of testimony." But he does not support this assertion with further argument or citations to relevant legal authority. See RAP at 10.3(a)(6); see also Pub. Hosp. Dist. No. 1 v. Univ. of Wash., 182 Wn. App. 34, 49, 327 P.3d 1281 (2014) (" '[N]aked castings into the constitutional seas are not sufficient to command judicial consideration and discussion.' " (alteration in original; internal quotation marks omitted) (quoting State v. Johnson, 179 Wn.2d 534, 558, 315 P.3d 1090 (2014))). Instead, Paul's arguments that the trial court erred in denying reconsideration of the restraining order merely incorporate his earlier arguments or summarize the procedural facts leading up to entry of the restraining order without explaining, with reference to any CR 59 standard, why the trial court abused its discretion. Paul fails to persuade us that the trial court erred by not reconsidering the restraining order. See Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) (appellate court need not consider assignments of error unsupported by reasoned argument).

---

small, when the action is upon a contract, or for the injury or detention of property;
(7) That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law;
(8) Error in law occurring at the trial and objected to at the time by the party making the application; or
(9) That substantial justice has not been done.

Paul also does not persuade us that the trial court erred by not reconsidering its decision to deny a trial continuance. Paul contends that a continuance was necessary so that he could present testimony from his mother, brother, and brother-in-law. He also asserts that "[t]hese witnesses would have been able to testify as to [Pamla]'s behavior." Paul contends that testimony about Pamla's behavior "would have been potentially relevant to [Pamla]'s request for a restraining order." But he neither explains the purported relevance nor persuades us that denying what would have been a fourth continuance constituted an abuse of discretion under the standards set forth in CR 59.

We affirm.

Andrus, A.C.J.

WE CONCUR:

Coburn, J.

Bowman, J.